FW021885

ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2014 MAY -9 PM 3:34

CLERK OF COURT

***IN THE UNITED STATES DISTRICT COURT***

***FOR THE NORTHERN DISTRICT OF TEXAS***

***FORT WORTH DIVISION***

| | | |
|---|---|---|
| JAMES BOSWELL | § | |
| | § | |
| VETERANS HELPING VETERANS | § | |
| | § | |
| PLAINTIFF | § | CIVIL ACTION NO. |
| | § | 4-14CV-330-Y |
| | § | |
| TEXAS CHRISTIAN UNIVERSITY, | § | |
| | § | |
| HONORABLE JOHN MCHUGH, | | |
| SECRETARY OF THE ARMY | | |

Victor J. Boshini, Jr. Chancellor of
Texas Christian University

Mr. Clarence Schbauer III,
Chairmen of the Board of Trustees

Robert Ginsburg Attorney
for Texas Christian University

LAW Firm of McDonald Sanders

Board of Trustees, Texas Christian University

Honorable Judge Terry Means
Defendants

**PLAINTIFF'S ORIGINAL PETITION**

COMES NOW, James Boswell (hereinafter referred to as "Plaintiff") Plaintiff received the dismissal and notice of rights for EEOC charges 31A-2013-00113 and 31A-2014-00028, both documents, on or about February 11, 2014 and the EEOC's notice **(Plaintiff Exhibit A)** to file suit within 90 days authorizing suit against respondents. Plaintiff complains the University has taken actions and conspired to shield the entity from liability and has either manipulated or solicitation thru deceptive means or fraudulent concealment the support of the judiciary and Department of the Army concerning sexual assault to TCU students and military victims and this violates the Fourteenth Amendment of the United States Constitution, First Amendment by retaliation to perceived critics, and the Fourth Amendment through the improper use of TCU police and unlawful search and seizure. Plaintiff complains of Victor J. Boshini, Jr Boshini, Jr. Chancellor of Texas Christian University; Mr. Clarence Schbauer III, Chairmen of the Board of Trustees; Robert Ginsburg Attorney for Texas Christian University; LAW Firm of McDonald Sanders, Texas Christian University; Texas Christian University and Board of Trustees, TCU the above named individuals and entities hereinafter referred to as "Defendant"), and for such cause of action, would respectfully show unto the Court and jury as follows:

## I. DISCOVERY CONTROL PLAN

Plaintiff hereby moves to conduct discovery in accordance with a discovery control plan tailored to the circumstances of this specific suit. In the interest of judicial economy and equity, Plaintiff moves to conduct discovery by Court Order (Level 3) in accordance with Federal Rules of Civil Procedure.

## II. PARTIES

1. James Boswell is plaintiff and resides in Tarrant County, Texas and is the President of Veterans Helping Veterans, a non profit organization with the address of 414 Morrison Drive Euless Texas 76039.

2. Defendant Texas Christian University is a non profit organization in a contract agreement with Department of Defense and executes ROTC scholarship, DOD grants, and Veteran Education benefits. TCU Defendant is considered an entity under the Texas definition, the same as a chartered school, in acceptance of state and federal funds, thus subject to the Department of Education and State of Texas oversight. Defendant and or agents, officers, servants, employees or representatives performed actions with the full authorization or ratification of the Board of Trustees. Service of process may be had upon Defendant by serving process upon McDonald Sanders 777 Main Street, suite 1300, Ft Worth Texas 76102, the Secretary of the Army per the address attached, and Honorable Judge Means in this court.

## III. VENUE AND JURISDICTION

3. Venue is proper because an EEOC (as opposed to a Texas Commission on Human Rights Act (TCHRA) (Labor Code Chapter 21) law suit can only be held in a United States District Court.

4. Conflict of Interest occurs because the Honorable District Judge Terry Means is alleged to have politically retaliated because of his rulings in the case as part of a regime which has protected the University from liability. And his recognition that Plaintiff has alleged court action and misconduct on Governors Jebb Bush and Governor George Bush. For this reason, Plaintiff request that another court and visiting District Judge be assigned the case to avoid the Plaintiff's perception of impartiality. Jurisdiction is invoked in order to secure protection of the Fourteenth, First and Fourth Amendments to the US Constitution and to redress deprivation of rights and disparate treatment to this Veteran, former TCU employee, and former TCU graduate student, and to assess legal damages both general and punitive, based on retaliation harassment and discrimination. Plaintiff shows standing. At the time of the protected disclosures to law enforcement authorities, Plaintiff provided his discrimination and whistle blower complaint to several authorities e.g., plaintiff was a state employee assigned as a JROTC instructor at Ector County Independent School District. Defendant TCU was a former employer with control of plaintiff's destiny, and career within the meaning of the Texas Commission on Human Rights Act as amended and the Texas Workforce Commission. Plaintiff brings suit under federal statutes

however TEX. LAB. CODE § 21.002(4) and .TEX. LAB. CODE § 21.254 is to be considered concerning the EEOC/TCHRA joint agreement. More salient, Plaintiff is a US Citizen, who served his country in five of the ten Army Divisions, and as a US Citizen and Army Ranger is subject to the protections of the First, Second, Fourth, and Fourteenth Amendments, and were deprived of these protections.

## STATEMENT OF THE CASE

5. TCU has subjected complainant to severe and pervasive harassment on account of an expression in a whistle blower complaint to several authorities for opposing TCU's noncompliance with Title IX of the Education Amendments of 1972, 20 USC And 1681 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in violation of Title VII of the Civil Rights Act of 1964 as amended by the City of Ft. Worth Ordinance # 7278 and the Texas Commission on Human Rights Act, and in violation of 42 U.S.C 1983, section 1983 First, Second, and Fourth Amendment violations.

## FACTS OF THE CASE

6. Plaintiff's initial EEOC charge was filed February 11, 2013 within 300 days of TCU's letter dated December 10, 2012. The EEOC transferred the charge to the FT. Worth Commission on February 12, 2013. Exhibit A includes charges:

**James D. Boswell v TCU HRC Charge No.: 31A-2013-111 EEOC Charge Charge No.: 31A-2013-00113 based on race is absent of the file, and or documentation showing refusal to amend.**

**James D. Boswell v TCU HRC Charge No.: 31A-2014-028; EEOC Charge Charge No.: 31A-2014-00026 retaliation because of filing a complaint opposing violation of Title VII of the Civil Rights Act of 1964, Age Discrimination employment Act of 1964 amended as the City of Ft. Worth 's Fair Employment ordinance of 7228, and the Texas Commission on Human Rights.**

TCU's letter, at **exhibit B** is a TCU cease and desist order – a civil rights no trespass violation. Plaintiff requests Judicial Review of the EEOC decision, the expert testimony and affidavits in support of Plaintiff's "two" charges, issues regarding public concern, and the plausible motivational reason why TCU retaliates against critics. Plaintiff reports a violation of the False Claims Act to the Texas Attorney General, racial discrimination of students and employees and rape of a TCU student to the Texas Rangers on or about April 2, 2012 and to the Office of Inspector General Department of Education again on November 20, 2012. Complainant finds fault with the EEOC tracking, the delay in the process, investigative procedures, and failure to address the Ft. Worth Commission's complete disclosure of the two case file, including exculpatory evidence. The initial charge sheet and the EEOC transfer letter to the Commission gives an appearance as intentional and continuation of the TCU conspiracy which is corroborated by a senior military official to the Department of Army at exhibit C. Boswell alleges that the EEOC directive, on Jan 7, 2014, made to the City of Fort Worth Human Relations to make available for review the complete investigation files did

not occur. This has prejudice the case. Complainant submitted several affidavits, expert witness testimony by Dr. Herff Moore, a law suit of Female student "KS" (her initials) verses Texas Christian University alleging that three TCU athletes raped her and then she was hospitalized because of herpes, and sworn testimony showing racial animus. Plaintiff's whistle blower complaint was for harassment and retaliation based on opposing the discrimination statutes (pursuant to Section 21.051 et seq. of the Texas Labor Code, Federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, Chapter 21 of the Texas Labor Code) 2) violation of the US Constitution and Texas labor law Constitutional Violations and Blacklisting, Tex. Lab. Code § 52.031, § 103.001-05 and 3) fraud concerning violation of the False Claims Act; Whistle Blower Enhancement ACT of 2012, the American Recovery Act of 2009, and the Texas Whistle Blower Act per Tex. Gov't Code Ann. § 554.001 -10 and retaliation because of filing a complaint opposing violation of Title VII of the Civil Rights Act of 1964, Age Discrimination employment Act of 1964 amended as the City of Ft. Worth 's Fair Employment ordinance of 7228, and the Texas Commission on Human Rights.

On December 10, 2012 TCU caused plaintiff to be black listed. No one may "blacklist" an employee, cause an employee to be blacklisted, or otherwise conspire in any way to prevent a former employee from getting another job. It is alleged that TCU attorney has violated the Texas Disciplinary Rule for

Professional Conduct on multiple accounts by committing gross negligence and through participation in lies, fraud and deceit. This is comparable to a RICO white collar crime and it is separate from a bad business deal. For example, Texas Disciplinary Rule of Professional Conduct 4.04 forbids presentation of charges to gain such advantage. This is an Army and University scandal subject to the White House Task Force on Sexual Assault Review. As long as the cease and desist order remains in effect absent due process it has current effect without due process to past retaliation found in the Department of Defense Military Whistle Blower Report number H94L56226017. Court records show TCU Dean requested Plaintiff's removal as an ROTC instructor who reported a cadet TCU student sexual assault by another ROTC instructor. The instructor is accused of adultery and violating the Uniform Code of Military Justice. While TCU agents performed an illegal search and seizure without warrant, violating the Fourth Amendment, TCU escorted Plaintiff and 12 year old daughter to the Ft Worth Navy base hospital. TCU cease and desist order, December 12, 2012 is retaliation of the TCU agent conspirators including: 1) person who allegedly raped the female ROTC cadet 2) the supervisor and University and Army Chain of Command responsible for TCU student and employee discrimination based on race, and 3) the University Dean who also benefited from misapplication of fiduciary property, Texas Law 32.45 and 4) and TCU attorney alleged misconduct. These conspirators retained their positions as the plaintiff – the

whistle blower and family suffered – another fact issue. General Counsel, Mr. Ginsburg letter to plaintiff dated 10 December 2012 is alleged to have grieved plaintiff and cause for injury because it willfully deprives Plaintiff of constitution rights and resists, prevents, impedes, or interferes with the performance of a duty under or the exercise of a power while Plaintiff was a participate in office of Civil Rights action and whistle blower complaint. Plaintiff is prohibited from a visit to the Veterans Administration Education representative at TCU, the Human Resource Director to determine alumni education benefits and that for the daughters, and for discussing Plaintiff's perception of Trustees lack of due process from seeking employment for future jobs. The letter provides for continuation and remedy for past discrimination and is a fact in dispute for trial and/or mediation. It gives an appearance that the entire firm acted, knowingly, with a conscious failure to act, with conscious indifference creating a fact issue on encouragement for alleged violation of SUBCHAPTER B. UNLAWFUL EMPLOYMENT PRACTICES which covers "limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee. Sec. 21.056. Defendant is liable for Aiding and abetting discrimination.

7. A FOIA and redress letter was sent to the Commanding General of Fort Knox Kentucky on September 19, 2013 and to the Director of EEOC, San

Antonio Field Office, San Antonio, Texas 78229; to Ms Betsy Price and the Fort Worth City Counsel members, and to Lisa Thomas, the Chairperson of the Human Resource Counsel, on March 20, 2014, certified mail. These officials have not shown pro-activity to reduce and counter the systemic failures regarding sexual assault, racial prejudice and discrimination. On the contrary, by omission, they have allowed public policy by custom to continue at TCU and this violates constitutional practices in accordance with this time line.

- April 30, 2011 TCU student raped in dormitory by 3 miscreant TCU athletes; media says questions fraud, misrepresentation, and non compliance with Title IX; Boswell interest in ROTC high school safety and recruitment on TCU property provides for standing
- April 2, 2012 plaintiff's FCA and Title IX violations to US Department of Education
- April 2, 2012 Interview/corresponds with law enforcement Director, Texas Ranger
- December 10, 2012 TCU issues No Trespass proclamation, use of police; prohibits employment and education opportunity; black lists Ranger in retaliation
- February 7, 2013 Boswell visit to HR banned concerning job title 2013-019 Assistant Director Community Involvement; Files EEOC complaint 02-11-2013
- February 11, 2012 Boswell files Whistle Blower Action; Tort Injury Claim to meet deadlines
- February 12, 2012, EEOC transfers case to Ft Worth Commission, H-Relations
- August 7, 2013, USWDC provides disposition on two 42 U.S.C section 1983 claims 1) free speech and 2) abuse of police. Findings are basis for inference for these 42 USC claims

- September, 17, 25, 2013 Ft Worth Commission executes (delayed) charge on TCU
- November 30, 2013 TCU prohibition – plaintiff attendance of TCU v Baylor game
- December 3, 2013 Expert Testimony witness findings to Commission; citing reasons for indictment; and attorney professional misconduct
- December 18, 2013 Ft Worth Commission Ruling
- December 30, 2013 Boswell appeal to EEOC
- February 11, 2014 EEOC grants permission to sue

## IV. Causes of Action

### Texas Whistle Blower Act Complaint.

8. ROTC instructor James Boswell like the teacher at Pegasus complained about allegedly illegal activity to the Texas Rangers and US Department of Education and Inspector General concerning two entities: ECISD under the US District Court of the Western Distict of Texas and TCU under the USDC of North Texas. Plaintiff's remedy is protection under the United States Constitution and for an adverse action under the Texas Whistle blower Protection Act. Plaintiff was "terminated in retaliation for reporting a violation of law to an appropriate law enforcement authority" and was retaliated by TCU. Under section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, a person may appeal an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a "governmental unit" as defined in section 101.001 of that code. See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2013) (appeal from interlocutory

order); TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (West Supp. 2013) (definitions). The applicability of the Whistle Blower Protection Act applies to taking adverse personnel action against a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. TCU's letter to Boswell is considered retaliation, unlawful and violates TEX. GOVT CODE ANN. § 554.002(a). Clarification of the statutes and Section 12.105 of the Texas Education Code allows for an interpretation whether the education institution of TCU may undergo Section 101.001(3)(D) of the Tort Claims Act, and the TWBA jurisdiction. Boswell believes this court has said "Yes" recognizing the "catch-all" provision in subsection (D). It provides: (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D) (West Supp. 2013). Boswell new charges to US Army Cadet Command Inspector General dated January 25, 2013 and to the Department of Defense initiated an investigation concerning reprisal, March 20, 2013, and to the Honorable Mayor of Fort Worth Texas, and to Senator Kirsten Gillibrand March 20, 2013 has the causation effect of keeping the no trespass order in tact.

**Allegation Against Judge Terry Means**

9. Honorable Judge Terry Means is considered as an alleged conspirator in support of shielding TCU from liability. Plaintiff asks the Judge for consideration for a new court not associated with TCU and to consider the merits of this case and authorize an amendment to the original petition in TCU IV adding 42 USC section 1983 charges and based on the Solicitor General reasoning that if open-enrollment charter schools were not "governmental units" under the Tort Claims Act, they would enjoy "greater tort immunity than cities, counties, school districts, and other purely governmental entities." Charters fall under Subsection (3)(D).") The broad catch-all language in subsection (D), subsection (B) lists specific terms such as 'the powers granted to [traditional public] schools' and to receive and spend state tax dollars (and in many ways to function as a government entity)— TEX. EDUC. CODE §§ 12.105, 12.104(a), 12.106, 12.107, and 12.1053), accordingly, imply "[t]hose same attributes and circumstances support a conclusion of governmental immunity." Section 12.1056 would suggest that open-enrollment charter schools are immune from all tort liability, unique among all governmental entities in the State. The Solicitor General sees this as an illogical and surely unintended outcome—traditional public schools exposed to tort liability. Section 271.152 provides that a "local governmental entity" waives "sovereign immunity to suit" for the purpose of adjudicating a claim for breach of contract where the contract meets the requirements of Subchapter I of Chapter 271 of the Local Government Code.

See TEX. LOC. GOV'T CODE ANN. § 271.152. Plaintiff notes Torres v DISD Cause CC -12-05362 filed August 31 2012 litigates the violation of the TWBA and unlawful retaliation. The Education Code expressly provides that an open-enrollment charter school is a "governmental entity" for purposes of Subchapter B of Chapter 21 of the Local Government Code (regarding competitive bidding on certain public works contracts), but does not mention Subchapter I of the same chapter where the waiver of immunity is found. See TEX. EDUC. CODE ANN. § 12.1053(b)(1)(B) (West 2012) ("An open-enrollment charter school is considered to be ... a governmental entity for purposes of . . . Subchapter B, Chapter 271, Local Government Code . . . ."). The same section of the Education Code provides that an open-enrollment charter school is considered to be a "political subdivision" for purposes of Subchapter A, Chapter 2254, Government Code, the Professional Services Procurement Act. TEX. EDUC. CODE ANN. § 12.1053(b)(2)(West 2012). Complainant shows reports in good faith, of fraud waste and abuse, timely submitted, to an "appropriate law enforcement authority" to authorized to "regulate under or enforce the law alleged to be violated in the report" or "investigate or prosecute a violation of criminal law." Tex. Gov't Code Ann. § 554.002(b) (Vernon 2004). Plaintiff was a state employee during plaintiff's WBA complaint to the authorities, April 2, 2012, in an education institution in the State of Texas and was subject to Texas State Whistle Blower law. While plaintiff was grieved by two state entities, ECISD and TCU, Plaintiff had

positive vision that TCU would be remorse and would seek authority from the TCU Board of Trustees to concur with the Department of Army vindication of any alleged poor ROTC instructor performance while as an ROTC instructor at TCU. Plaintiff's packet on TCU, delivered to the Texas Ranger's agent in Midland Texas, would persuade a reasonable jury that TCU had harmed Major Boswell and family and that this harm over a twenty seven year period constituted systemic discrimination and good cause for the government to recover funds per the American Reinvestment and Recovery Act of 2009 and the Commander in Chief's Joint Task Force on sexual assault in which fifty Universities are published as being investigated. TCU escapes accountability in spite of Plaintiff's protected disclosures and affidavits to the Fort Worth Commission with evidence of racial prejudice and sexual impropriety and reasons for Plaintiff's opposition to discrimination statutes. TCU letter of retaliation, dated December 10, 2012 gave a present current actionable effect and merely another pretext for failing to disclose and failing to mirror the Department of Army and DOD corrective remedy. Malaysia Flight 370 missing airplane changed course in mid stream is unexplainable. So is the change in the justice course from a

scheduled jury trial to dismissal. Judge Means has denied justice for trial and has failed to recuse himself from the proceedings. This Presiding Judge for TCU IV abruptly dismissed the case with prejudice joining the individual conspiracy with intent to retaliate and protect the Army and University

institutions. It is next to impossible for this Judge to back track and admit systemic court failures and TCU wrongdoing, and participation in the Army conspiracy. Boswell pleads this Judge or any associated Judge with this EEOC charge recuse themselves and The Chief Justice of the North District Court recuses the Fort Worth District. This Presiding Judge has concealed and suppressed evidence for example concerning the disappearance of TCU faculty employee John Dunlap - a black employee and the clery report governing the TCU athletes gang rape of "KS" v TCU lawsuit. This has the effect of shielding TCU from liability unlike the court treatment fin Dallas for SMU.

10. The TCU letter was merely a continuation of previous reprisal action and violation of TCU Faculty/Staff Handbook, policy, procedure, and Human Resources Department policy, and DOD education guidelines for training ethical leaders and responsible citizens for future military duty.

11. Plaintiff James Boswell has prevailed with Administrative Law Appeals in an action dated 16 December 1998 which eliminated the adverse TCU ROTC performance appraisal from the record and declared Plaintiff's discharge from the Army as null and to no effect. Past Discrimination is now a fact issue, and with the new rapes and death of TCU students, it is cause for a safety issue of public concern. It is reasonable to conclude that plaintiff is suffering from Post Traumatic Stress Disorder and the letter provided by TCU dated 10 December 2012 has escalated the harm. The current effect of

depriving plaintiff of loss of liberty and pursuit of happiness and adjudicating issues concerning retirement benefits and related privileges earned while a full time TCU faculty member and an action considered outrageous and showing deliberate indifference. The TCU response to Plaintiff's letter to TCU dated November 21, 2012 where plaintiff alleges "past and current discrimination" requires redress. TCU conspirator efforts with Army Officials and the affidavit alleging an Army primary Staff officer, under the direct supervision of the III Army Corps Commander, at Fort Hood Texas made the following statement to plaintiff: "I will kill you" still has current effect and contradicts 10 U.S.C. 1034 and DOD Directive 6490.1 mental health evaluation. Plaintiff visited the TCU Chief of Staff for redress of issues.

**2nd Amendment Violation**

12. During the course of TCU's involvement in the Plaintiff's discharge from the Army, Plaintiff was prohibited from concealing a concealed hand gun on the Fort Hood military installation. This same violation has resulted in countless soldiers being killed in three massacres. Plaintiff states the Department of Army prohibitions on posts or universities where assault and sexual assaults are common deprives Plaintiff and potential victims of 2nd Amendment rights. Defendant's response with regard to conspiracy is an impermissible factor and motivating factor in an employer's discriminatory decision, not necessarily the most important factor to black ball plaintiff from

all TCU premises. The court is requested to determine whether the TCU letter serves as a deterrent for critics of free speech and whether it is a constitutional action, and whether TCU receives Federal and state funds and economical advantage based on deceit and false advertisement. Plaintiff's protected disclosures concerning the TCU packet (including 15 student and employee affidavits) is evidence which places doubt on the compliance paperwork for acceptance of funds of 162 million dollars.

13 Under the Inspector General Directives, provisions of American Recovery and Reinvestment Act of 2009 and the Whistle Blower Enhancement Act of 2012, plaintiff, as a grieved retiree, per the significant finding by the DOD Inspector General, finding retaliation, as a result of the military whistle blower reprisal investigation, a federal employee on active duty with the assignment at Texas Christian University may be entitled to.

**"If whistle blower retaliation is found, the agency would be required to take corrective action, which would include reasonable attorney's fees and any other reasonable costs incurred, and could include back pay and related benefits, travel expenses, and compensatory damages not to exceed $300,000"**

14. At the time of the Plaintiff's protected disclosures to law enforcement authorities, April 2, 2012, Plaintiff was employed in an Army ROTC Contract with oversight responsibility for 142 cadets. Plaintiff continued to learn about and to be witness to evidence that deprives students from a quality education and calls into question a high school JROTC scholarship student 's admittance to TCU. TCU allegedly failed in the obligation and authority to

protect students (see exhibit D and E) and to correct another career of a black sergeant who lost everything because he attempted to expose the official misconduct and employment corruption (see Exhibit F) depriving critics of preservation of life, liberty and pursuit of happiness.

15. The TCU case earned legislative oversight as proclaimed by Senator Sam Nunn "Mr. Boswell's case merits careful review and serious consideration in light of the strong public policy against whistle blower retaliation". The interview with the Texas Rangers on April 2, 2012 conveyed affidavits and protected disclosures concerning discrimination, violations of state and federal statutes, and conspiracy concerning the TCU instructor having sex with an ROTC cadet, and showing that black student and employees were victims of prejudice. The settlement regarding a 10 million request (Exhibit E) reveals the discrimination is ongoing and the TCU premises is unsafe because Defendant's deter critics from being on campus.

16 Plaintiff notes the Education Industry targets whistle blowers, through oppression and suppression of evidence, which accounts for obstruction for the recovering billions of education dollars otherwise collectable through the American Recovery and Reinvestment Act of 2009. In Boswell's case it is political retaliation because Boswell may not enter politics as Graduate student at TCU.

**Violations of Texas Rules of Professional Conduct**

17 Plaintiff alleges that the McDonald attorney law firm violates the Texas Rules of Professional Conduct while the firm continues to withhold material facts subject to due process by the TCU Board of Trustees. In an opinion filed November 18, 2013, in the Court of Appeals Fifth District of Texas at Dallas, No. 05-13-00482-CV, PEGASUS SCHOOL OF LIBERAL ARTS & SCIENCES, Appellant V. KIMBERLY BALL-LOWDER, Appellee on Appeal from the 191st Judicial District Court Dallas County, Texas Trial Court Cause No. 12-14617 concerning an interlocutory appeal presents the question whether an open-enrollment charter school, which enjoys governmental immunity from suit, is a "local government entity" for which governmental immunity is waived respecting claims under the Texas Whistleblower Protection Act. Subsequently, the Texas Supreme Court decided LTTS Charter School, Inc. v. C2 Construction, Inc., 342 S.W.3d 73 (Tex. 2011) (C2 Constr. II), opinion on remand, C2 Construction III, 358 S.W.3d 725 and that the Whistleblower Protection Act applies to an open- enrollment charter school. The school is a private nonprofit corporation, like TCU. The court is asked to address whether evolving law has made the University liable under the Texas Whistle Blower Act and state or federal statute, and rules as policy of the local governmental entity.

18 The rationale for not accepting Colonel Don Ezell USMC Retired Colonel recommendation to the Trustees is a fact in dispute concerning TCU indifference to supporting the US Constitution Fourteenth Amendment.

**Cause of Action - 42 U.S. 1983 retaliation claim concerning violation of the First, Fourth and Fourteenth Amendments**

The Human Rights Act defines "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter does four things: (1) Boswell opposes a discriminatory practice (the sexual assault and gang rape of a student). (2) Boswell files a whistle blower complaint with the Department of Education April 2, 2012, (3) Boswell filed notice with TCU November 21, 2012 and (4) Boswell testifies, assists, or participates in any manner in an investigation, proceeding, or hearing as Boswell did in his interview with the Texas Rangers. Boswell discovered longstanding, systemic wrongdoing, and illegalities significant University Interscholastic League (UIL), students treated in a vulgar and racist manner, and administrators who changed grades to avoid discipline action, but the matters were covered up rather than investigated.

**DEPARTMENT OF ARMY CONDUCT**

Boswell alleges US Army Cadet Command and the University had a long standing and persistent custom of permitting retaliation against critics who adversely complained against them especially when it comes to covering up financial management or embezzlement of public funds as Boswell's whistle blower complaint entails. The disappearance of an Afro American TCU faculty

member is questioned by one of the TCU Army affiliated conspirators testimony to the Secretary of the Army Department (**Exhibit F**), all of which culminates in an Army/TCU letter of harassment and retaliation dated 12-10 -2012.

19.While Texas Christian University and United States Army Cadet Command are in a Department of Defense contact agreement, Plaintiff's protected disclosures report non compliance and the fraudulently acceptance of federal and state money in violation of Public Law 111-5 & 1553 (a) (Feb. 17, 2009). Plaintiff filed Whistle Blower complaints on April 2, 2012 Major Boswell to the Secretary of Education, and to the Secretary of the Army":

**"As the victims in the Penn State scandal, it takes time for truth to be revealed. The ROTC cadet at Texas Christian University should be compensated. This would bring justice, integrity and closure to a dark page in TCU and ROTC Cadet Command history. The victim statements are attached in the TCU file".**

20. On April 2, 2012 plaintiff's whistle blower complaint addressed the responsible entities who violated the State and Federal Entities to multiple authorities. (**Plaintiff Exhibit G**).

21. On 11 April 2012, Plaintiff interviewed with the Director of the Texas Rangers. Ranger Hank Whitman expressed patriotic respect for one of the more notorious TCU alumnus's, Don Ezell, Colonel USMC Retired. The Director acknowledge receipt of the employment packet and showed interest in the USMC retired Colonels letter to the Chairman and Members of the

Board of Trustees, Texas Christian University. Whether this letter was sent to each member of the Board is a material fact in dispute. The letter in question states in conclusion "I recommend that Texas Christian University recognize and bear responsibility for these wrongful actions and bring this case to satisfactory closure".

22 On April 12, 2012. Plaintiff was interviewed by a Ranger Agent of the Midland Office concerning being a witness to TCU allegedly unlawful fraud, waste and abuse. He promised he would submit the packet to TCU. During the interview the agent made the remark "Are you playing the race card" ? On November 20, 2012, plaintiff provided the Office of the Inspector General, Secretary of Education, an official Whistle blower complaint using the form for whistle blower reprisal claims related to education funds provided under the provisions of the American Recovery and Reinvestment Act (ARRA) of 2009, advocating investigation concerning federal and state money acceptance by fraudulently means.

23 On 21 November plaintiff provided the letter to TCU and the whistle blower report.

On December 12, 2012 plaintiff received McDonald Sanders, A Professional Corporation, Attorneys At Law letter via certified letter.

24. Plaintiff's whistle blower complainant on December 20, 2012, and January 24, 2013, makes references to the Sunset Advisory Commission Staff Report, Texas Education Agency dated October 2012. Plaintiff provides

proof of TEA sanctions, including a financial report, and memorandum from a state entity Chief of Staff illustrating unlawful activity and potential fraud as he writes: "a position not best for them or legally defensible". Plaintiff's allegations against TCU reveal retaliation and provides rationale to recover federal funds in accordance with the ARRA. The whistle blower actions was a major factor for twenty seven years of discrimination and current retaliatory act to ban the former employee from property. Plaintiff is a Vietnam Era Veteran of Age 63.

25. The Defense Contractor ROTC Cadet Command trusted plaintiff in two respective assignments to supervise ROTC cadets: At TCU, plaintiff assumed the role of executive officer with the supervisory role over approximately one hundred (100) cadets. While a state employee in ECISD, at the time of plaintiff's whistle blower complaint April 2 2012 against TCU and ECISD plaintiff was responsible for the Senior Army Instructor for one hundred forty two (142) cadets.

26. One of the TCU Professor of Military Science first orders was to refuse equal treatment to Black cadets and to black Military instructors. The DOD IG response concerning the 22 Army IG allegations was that "Mr. Boswell's actions are not in dispute". This statement and the resultant award for back pay and four years of constructive credit provides a high degree of validity that TCU officials embarked on a continuous pattern of discrimination against employees under their supervision and control who were of African American

heritage. Plaintiff only shows the past discrimination to show that he opposed discrimination and continues to be retaliated.

**First, Fourth, and Fourteenth Constitutional Challenges**

27. Texas Christian University's letter blackballs plaintiff from employment and determining right of privileges concerning reinstatement. An allegation of unconstitutional application of a statute must first be raised in the trial court. In plaintiff's case, TCU abuses its authority and arbitrarily embarks on the Texas criminal-trespass statute. It is unconstitutional on its face. The statute is over broad because it encompasses public universities and permits university officials to ban persons from campus for no reason or unconstitutional reasons. A statute may be over broad if it tramples on the First amendment rights. It sweeps within its scope a wide range of both protected and non-protected expressive activity. In this case the statute is applied without due process. Where it is understandable the criminal-trespass statute is clearly designed to punish activities that are not constitutionally protected, in this case plaintiff alleges to the EEOC that his speech is wrongfully suppressed. Plaintiff was a victim of discrimination because of his viewpoints for opposing discrimination. He has suffered from being a whistle blower and from a similar TCU cease and desist order for twenty-seven years.

28. This order proposes by its terms, that it requires a grievant to obtain approval for expressive or communicative conduct on the university campus.

Defendants must disclose a legitimate government compelling interest to exclude a person from its campus. Complainant has a constitutional right to be treated the same as an other TCU veteran or alumni. These rights are violated due to the enforcement of an unconstitutional statute. This puts the potential deprivation of a right protected by the First Amendment in issue. This statute, as written, allows a university to punish the whistle blower or grievant for complaining about a discrimination charge and it serves as a deterrence for reporting law breaking and corruption and thereby can breed fraud. The Texas statute does not grant such unfettered discretion to those enforcing the statute. If TCU was to agree to plaintiff's views, as described in his letter dated November 21, 2012, plaintiff would be on the Board of Trustee Agenda. Corporation could have included team work and fairness to avoid public interest and criticism of Trustee Governance as describe in the 217 page PENN State scandal report. It is probable that at least a minority of the Board would consent to all TCU victim employees and students be compensated because of corrupt practices authenticated by affidavits to law enforcement agency. In short, discovery will determine the legal sufficiency of the evidence provided to the Texas Rangers and to the Inspector General to recoup funds. Plaintiff alleges TCU applies this statute unlawfully and TCU uses this statute for a tool and primary purpose of suppressing speech.

## VI. DISPARATE TREATMENT BASED ON RACE

29. TCU cadets and Cadre received disparate treatment because of race. Such actions violate Section 21.051 of the Texas Labor Code and the Civil Rights Act of 1964. As a direct result of reporting this disparate treatment, Plaintiff has suffered the December 10, 2012 retaliation letter and he continues to be treated differently and subject to TCU's malice and is entitled to recover damages from Defendant.

## VII. DISPARATE TREATMENT BASED ON AGE, AGE DISCRIMINATION AND TCU POLICY VIOLATIONS

30. Plaintiff is eligible for a fair reading of the whistle blower reinstatement under the Whistle Blower Enhancement Act and retirement "qualifying events" from TCU'S HANDBOOK. It is alleged that TCU violated the Amendment to the Age Discrimination in Employment Act of 1975, which became effective January 1, 1994, by depriving Plaintiff from a reasonable request to visit the Board of Trustees concerning the whistle blower and discrimination statutes and from assistance for the available privileges and benefits available due to age, age 62 and what may be subject to the whistle blower reinstatement. TCU miscalculated and then violated Tex. Labor Code §§ 21.051, 21.052, 21.053, 21.054; TCHRA's employment provisions make it illegal for an employer to deny employment to or otherwise discriminate in the terms, conditions or privileges of employment against an individual on the basis of a past, current or perceived disability. Unlawful discrimination includes limiting, segregating or classifying an employee or job applicant in a

manner that deprives or tends to deprive an individual of an employment opportunity or adversely affects in any other manner the status of an employee.

31. TCU ordered Plaintiff for psychiatric evaluation at the Navy Air Station, Ft Worth Texas, after plaintiff reported TCU official (s) violation of policy including: Policy 2.070 Conflict of Interest, Policy 2.005 and 2.010 Performance Evaluation, Policy 1.005; policy 2.016 concerning Conflict Resolution, Mediation and Chancellor Review, and due process concerning TCU Board Governance, and on all matters pertaining to the University's non-discrimination policy, retaliation and compensation issues such as Policy 6.005 Tuition Assistance; Concerning Discrimination and Harassment; policy 1,001 Affirmative Action and Equal Opportunity Policy, the statement by the TCU ROTC female cadet page 15 -16 of the TCU packet provided to state and federal authorities. TCU polygraph examination of the ROTC cadet and sexual intercourse with the military Sergeant Major raises a fact issue. TCU Sexual Harassment Policy is clear on the prohibition of retaliation for filing a complaint against sexual harassment and topics of unwelcome sexual advance, submission to or rejecting sex, hostile environment, and the unlawful and breach of professional ethics even when sex is consensual and on retaliation for opposing violations of Title VII and Title IX.

## VII. DISCRIMINATION

32. This is a lawsuit in law and equity authorized and instituted pursuant to

the EEOC. All conditions precedent to jurisdiction under the Texas Commission on Human Rights Act, as amended, have occurred or have been complied with, to wit: A charge of employment discrimination was filed on February 11, 2013 jointly with the TWC and the Texas Commission on Human Rights (hereinafter "TCHR") also known as the Texas Workforce Commission Civil Rights Division ("TWCCR") within 180 days of the commission of the unfair employment practices per Texas Law. Tex. Lab. Code § 21.001, et. seq. authorizes The Texas Workforce Commission's Civil Rights Division (the Commission) to enforce employment rights in the workplace. Retaliation against an employee for opposing a discriminatory practice or participating in the filing or prosecution of a charge against an employer is also prohibited. Plaintiff files his charge on the basis of age (40 or older) per the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and Chapter 21 of the Texas Labor Code protect individuals over the age of 40 from discrimination in employment and shows opposition to TCU discrimination concerning race and sex. The Texas Workforce Commission (TWC) has the authority to investigate and issue orders and assess an administrative penalty against an employer if it determines that the employer acted in bad faith. Denying an opportunity to be on the Board agenda for the reasons stated in Plaintiff's November 21, 2012 letter gives an appearance that TCU is in violation of their own policies, as quoted.

33. The Attorney General of Texas may bring an injunctive action. Furthermore, an employer who intentionally fails to follow the rules may face third-degree felony charges and penalty with regard to abuse of discretion and disparate treatment. Plaintiff has concerns with the application of the criminal trespass and accommodation statutes. When TCU allows another person to enter TCU property, one who does not oppose TCU violations to discrimination regarding the statutes, with or without effective consent, this action is considered to be knowingly, intentionally, and/or recklessly applied.

34. As a result of Defendant's actions, Plaintiff has suffered loss of income and loss of career opportunity. Plaintiff has experienced humiliation and mental anguish and will, in reasonable probability, suffer from the same in the future. Plaintiff has incurred medical expenses and will incur medical expenses in the future. All of said damages exceed the minimal jurisdictional limits of the Court. These damages are continuing at the time of the filing of Plaintiff's Petition. Defendant's actions were carried out with a conscious disregard of the Plaintiff's rights and with the intent to vex, injure, or annoy Plaintiff such as to constitute oppression, fraud, or malice thereby entitling Plaintiff to exemplary and/or punitive damages.

## VIII. RETALIATION

35. This is a lawsuit in law and equity authorized and instituted pursuant to

the First Amendment and the Texas Commission on Human Rights Act (Labor Code Chapter 21). Plaintiff filed charges on April 2 2012 to the Texas Rangers and November 20, 2012 plaintiff filed charges with the OIG, Secretary of Education. The state entity and violation of Search And Seizure, Tex. Civ. Prac. & Rem. § 124.001 and invasion for privacy is the type of outrageous conduct plaintiff was victim to escalating reasons for damages. Texas law provides that individuals may recover damages for invasion of privacy.

**IX. Whistle Blower Violations against the Secretary of the Army**

36. The Whistle Blower Enhancement Act provides compensatory damages for prevailing whistle blowers under WPA cases that prevail after an administrative hearing, (Sec. 107(b)), including retaliatory investigations (Sec. 104(c)). Plaintiff participated in the Department of Defense Inspector General per (Sec. 104(c)), and plaintiff prevailed at an administrative hearing per (Sec. 107(b)). Plaintiff is entitled to TCU "related benefits" without trial. The court may note that 3 litigants of 226 survived as a prevailing party in the Federal circuit between October of 1994 to May 2012. The most significant benefits in the WPEA are listed below:

1.) Expanded Protection for Disclosures of Government Wrongdoing

- Closes judicially-created loopholes that had removed protection for the most common whistle blowing scenarios and left only token rights (e.g. only providing rights when whistle blowers are the first to report

misconduct, and only if it is unconnected to their job duties). (Sec. 101, 102)

- Clarifies that whistle blowers are protected for challenging the consequences of government policy decisions. (Sec. 101, 102)
- Cancels the 1999 precedent that translates "reasonable belief" to require irrefragable proof ("undeniable, uncontestable, or incontrovertible proof") before they are eligible for protection. (Sec. 103)
- Clarifies that protection of critical infrastructure information does not override WPA protection. (Sec. 111)

## X. TORT ACTION AGAINST TCU ATTORNEY AND LAW FIRM

37. TCU is sued for Tortious Interference with Contract and Prospective Economic Advantage. Veterans Helping Veterans has been denied business on campus. This organization helps Veterans receive education benefits and grants. Plaintiff alleges that TCU wrongfully interferes with a significant business relationship that has not been reduced to contract and violates TCU policy. The defendant employed unlawful means to obtain an economic advantage to harm the Plaintiff's non profit organization while stiffing all competitors by fraudulently accepting an unfair participation in a 54 billion education industry and failing to disclose the crimes. TCU has an economic interest in retaining all federal and state funds estimated at 6 million dollars

a year for the past 27 years. On the other hand TCU has a DOD contract with the United States. Any conclusion that may show a lack of compliance with the discrimination and whistle blower statutes combined with a track record of twenty seven years for suppression of communications may constitute reasons for forfeiture of federal and state money per the ARRA.

38. Mediation via the Texas Arbitration Act or Federal Arbitration Act is requested to decide and balance the profound competing interests and to determine the validity of the elements that plaintiff (1) had a reasonable expectation of entering into a valid business relationship of a three to four year ROTC assignment and eligibility of TCU related career benefits (2) that defendant had knowledge of the plaintiff's expectancy that TCU would comply with all federal and state statutes as part of the business relationship and that plaintiff may prosper as a Graduate student by earning a TCU Doctoral degree similar to other situated employees. (3) TCU's letter shows purposeful interference that was a factor in disturbing plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) Damages to the plaintiff resulting from such interference and the loss of opportunity of four years to earn career achievements according to an expert witness. To retire two grades higher (from 0-4 to 0-6 is valued at $ 480, 000 plus interest. Was the risk of loosing $ 480,0000 worth the retention of $ 72, 000, 000 million dollars? In summary Plaintiff will plead the present day elements of the (1) the existence of a valid and enforceable

contract between the plaintiff and the Department of Defense (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract (including the TCU request for the officer's removal) and (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. Defendant's letter, and conduct as described, is sufficiently egregious to award punitive damages. TCU independently violates its own policy pertaining to the premises defined in 2010 court case in the Texas appeal court in Waco, October 27, 2010.

## XI. CIVIL CONSPIRACY

Plaintiff initiated an inquiry and statement is required from U.S. Army Cadet Command and the Fort Worth Commission on Human Resources Commission, endorsed by the Mayor of Fort Worth, for their alleged support of public policy regarding the Texas Christian University pattern of discrimination and the perceived individual conspiracy by military executives and TCU administrators concerning the public concern for retaliation toward critics who allege that TCU students are sexual assaulted and are victims of systemic discrimination. According to " KS v TCU", April 30, 2011, the school clinic's diagnoses of herpes and University Sexual Harassment Compliance Director statement that it would be in the best interest to not report it to police; advising students involved in the police investigation to remain quiet is exculpatory evidence and a repeat of the Boswell experience and Boswell's

three law suits TCU I, TCU II, TCU III, years ago, alleging constitution violations and violation of 20 USC 1092 in the North District Court of Texas. One military assault ended in student dismissals and two military serviceman's removal from TCU and continued retaliation. More alarming is the conspiracy by individual TCU defendants, and by Department of Army affiliation rising to the new Cadet Command General Officer's level. Plaintiffs whistle blower complaint submitted to the Department of Education and to the Texas Rangers April 2, 2012 depict the conspiracy to commit fraud, waste and abuse, and corruption. Texas Penal Code § 37.09(a)(1) prohibits concealing or tampering with evidence during an official proceeding. This requires self referral to the nearest District Prosecuting attorney. Now the case may be elevated to more conspirators e.g. US Army Deputy Commanding General BG Maria R. Gervais, and U.S. Army Commanding General, Cadet Command Brigadier General Peggy C. Combs, the Honorable Mayor of Ft. Worth, Ms Betsy Price and the Fort Worth City Counsel members, and Lisa Thomas, the Chairperson of the Human Resource Counsel and her staff for failing to eliminate prejudice and discrimination in Fort Worth businesses - the work place. Each of these leaders had access to documents, the case files, DOD ROTC agreement, and hidden evidence. It is expected that each of these leaders will conduct inquiry, clear their name, and bring justice to the military and education industry, and

recommend remedy to make victims whole again subject to 42 USC section 1983 redress and remedy for constitutional violations concerning: .

- 12 year old child damaged in cross fire; unlawful search and seizure; arrest
- TCU fired Ranger in retaliation; Army, initially, concurs with Discharge from TCU
- Ranger reports to Ft Hood; tied winner of Dance-Marathon fund raiser - 26 hrs
- TCU involvement shown in death threat to Ranger; Reported to CID
- TCU testifies at Ft Hood Retention Board; effected in Army Discharge of Ranger
- Goes from Major to Sergeant, 7 yrs in Texas National Guard - Instructor of Year
- TX Veterans Commission supports Ranger; Successful Review Board hearing
- US Senator rescue; US DOD IG Military Whistle blower conclusion - retaliation
- DA EEOC conclusion TCU discharge decision "arbitrary against equity"
- DA IG finds TCU letter with TCU letterhead as invasion to policy; DA nullifies TCU supervisor qualification to provide performance evaluation
- Ranger reinstated to Army Major, 13 years later
- "DNA" evidence; TCU employee witnesses (s), participants of conspiracy, detail disappearance of witness, and criminal connection to Secretary of the Army
- Texas Governor protects TCU, orders silence; withholds exculpatory evidence; denies redress; Ranger sues
- Federal Judge protects TCU and Governor; withholds exculpatory evidence;
- Attorneys lie; Federal Judge denies Ranger's request for Recusal, 1st request
- Fifth Circuit affirms; provides sanctions in TCU I, TCU II, and TCU III

- US Supreme Court denies Ranger's two writs of Certiorari
- Cadet Command returns Ranger to ROTC duty Odessa High School,Texas; 23 year old PHS athletic impostures for 16; sexual assault; student resides with basketball coach; UIL revokes TX state championship; Whistle Blower ; oppression continues; December 3, 2013, TEA finding 21 of 40 schools rated as unacceptable. Boswell sues.
- USWDC TX order for jury trial 09/02/14 for two accounts of 42 U.S.C section 1983 retaliation charge in violation of First and police conduct Fourth amendment

- April 2, 2012 Ranger's False Claims Act (FCA) and Title IX violations to US Department of Education while a state employee, employed at ECISD
- April 2, 2012 Interview/corresponds with law enforcement Director, Texas Ranger and Cadet Command Inspector General
- December 10, 2012 TCU issues No Trespass proclamation, use of police; prohibits employment and education opportunity; black lists Ranger in retaliation
- February 11, 2012 civil action TCHRA, Whistle Blower Action; Tort Injury Claim
- February 12, 2012, EEOC transfers TCU retaliation case to Ft Worth Commission, Human Relations
- June 16, 2012 Judge denies 1) motion for recusai; 2) motion to transfer case
- August 7, 2013, USWDC provides disposition on two 42 U.S.C section 1983 claims 1) free speech and 2) abuse of police. Findings are basis for inference

the USNDC disposition of claims, dismissal with prejudice, is biased

- August 26, 2013 per scheduling order; time line for trial, request for Deposition of TCU Chancellor and Chairman, Trustee, declaration insurance page
- September, 17 & 25, 2013 Ft Worth Commission executes EEOC charges 31A-2013-00113 and 31A-2014-00028 on TCU.
- November 30, 2013 TCU prohibition - Ranger attendance of TCU v Baylor game
- December 3, 2013 Expert Testimony witness findings to Commission; citing reasons for indictment; and attorney professional misconduct
- December 4, 2013 USNDC denies motions to add plaintiff Veterans Helping Veterans and denied adding additional cause of actions; dismisses case with Prejudice; Judge for TCU IV same for TCU I and III, conflict of interest; grounds for political retaliation
- December 10, 2013 veteran complaint to DOL
- Dec 14, 2013, request for USNDC reconsideration, in alternative, notice to appeal to 5th Circuit
- February 11, 2014 EEOC grants Ranger permission to sue

**Common Law Tort for Professional Misconduct; Retaliation with intent to conspire.** TCU attorneys were served discovery for withholding exculpatory evidence from this court and violation of the Texas Disciplinary Rules of procedure rules relating to fraud and are actionable in this court

per Rule 8.04 (a) (1). Section 1553 of the ARRA protects employees from retaliation by non-federal employers who misuse covered funds. This includes private entities and State and local governments alike, while "covered funds" comprise those monies dispersed by federal agencies pursuant to the ARRA. Retaliation under the ARRA includes discharge, demotion, or general discrimination. TCU prohibits Boswell from seeking employment at the University after interfering with Boswell's three year contract, terminating the contract unlawfully, as well as two contracts from Afro-American race employees. An additional Afro-American employee disappeared. Several female and Afro American students left TCU due to intimidation. They witnessed corruption and their discharge was without due process. Boswell, his predecessor of Afro- American race, three others of Afro-American race, witnessed a TCU pattern of indifference concerning discrimination based on race and sex which resulted in Boswell reporting whistle blower disclosures then being black listing, the no tress pass verdict, and deprivation of liberties constitute retaliation for life. An employee is protected under Section 1553 if he or she reasonably believes that he has evidence of and has reported:

- gross mismanagement of an agency contract or grant relating to covered funds; (The ROTC scholarship funds)
- a gross waste of covered funds; (Millions of dollars TCU receives)
- a substantial and specific danger to public health or safety related to

the implementation or use of covered funds ("KS" law suit. She was gang raped by three TCU athletes). Therefore the protected role of the Commission on Human Resources and Cadet Command are questioned.

- an abuse of authority related to the implementation or use of covered funds; or (TCU letter to Boswell dated December 10, 2012)
- a violation of law, rule, or regulation related to an agency contract or grant relating to covered funds (violation of 20 USC 1091). Compared to other whistle blower provisions, Section 1553 provides very broad protections to employees who reasonably believe they have knowledge of misconduct. The court has denied the provisions of the False Claims Act, against the principles of the 5th Circuit ruling in Riddle and the constitutionality of not pursuing this claim with out an attorney is now challenged. The court is asked whether this ruling was "constitutional". And where the provisions of Tim Cole Act for remedy concerning TCU wrongful conviction apply to the presiding judge and attorneys for Record.

**Texas Deceptive Trade Practice Act section 17.50 of the Business Commerce Code.**

Boswell claims his retaliation claim occurred from his opposition to a horrific crime in the TCU dormitory, OSHA complaint concern for "herpes" court, parent concern for safety court and lack of compliance with the student hand

book and the TCU employee statement regarding conspiracy. By examination of Marine Colonel Don Ezel's letter it is inferred that the Colonel warned TCU of potential injury. The Director of the Texas Rangers gives this American's hero letter more credence as he points to the Colonel's amazing military record. TCU's non compliance with the TCU alumnus's request is to be considered an omission and finding on punitive damages. The Austin Director of the Texas Rangers call to Boswell April 2012 is evidence of a law enforcement inquiry.

**Cause of Action 42 U.S. 1983 retaliation claim**

Boswell asks the presiding officer examine the 42 U.S. 1983 retaliation claim under the same assessment as the the USWDC Magistrate Judge findings of fact August 7, 2013, Court record page 1321 and also under the Human Rights Act, which provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter does four things: (1) Boswell opposes a discriminatory practice (the sexual assault and gang rape of a student). (2) Boswell files a whistle blower complaint with the Department of Education April 2, 2012, (3) Boswell filed notice with TCU November 21, 2012 and (4) Boswell testifies, assists, or participates in any manner in an investigation, proceeding, or hearing as Boswell did in his

interview with the Texas Rangers. Boswell asks Fifth circuit to assign the case to the newest Judge unfamiliar with TCU I, TCU II, and TCU III.

## XII. DAMAGES

39. Per Liability to 42 USC Section 1983 claim and Pursuant to EEOC regulations, Plaintiff seeks all compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses allowed by law. Furthermore, as a result of the incident described herein, Plaintiff incurred set back in being reinstated and to be employed at Texas Christian University. Plaintiff was deprived the experience of due process with the Board of Trustees. Plaintiff has reasonable belief that TCU's black ball approach for opposing the discrimination statutes will escalate to a more severe level and will be such that application for future positions will be met by similar treatment, and lost wages and benefits in the past. In reasonable probability, such lost wages and benefits will continue in the future. As a result of the incident described herein, Plaintiff experienced inconvenience and a loss of enjoyment of life in the past, and in reasonable probability such inconvenience and a loss of enjoyment of life will continue in the future.

## XII ATTORNEYS FEES AND COSTS

40. Pursuant to 42 USC and EEOC statutes and Section 21.259 of the Texas Labor Code, and the whistle blower statutes, Plaintiff seeks all

reasonable attorneys' fees, court costs and expenses incurred in the prosecution of this suit and allowed by law.

## XIII EXEMPLARY DAMAGES

41. Plaintiff seeks exemplary damages for the harm caused by Defendant's willful actions.

## XIV CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST

42. Plaintiff claims interest in accordance with Texas Finance Code §304.001 et seq. and any other applicable law.

## XV. JURY DEMAND AND PRAYER

43. Plaintiff requests that a jury be empaneled to try all fact issues in this case. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein and upon final hearing of this cause, Plaintiff have judgment against Defendant for the following:

a. Judgment against Defendant for Plaintiff's damages, and TORT, including but not limited to compensatory damages, reasonable attorneys fees, costs and disbursements of this lawsuit, and other damages both general, special and punitive under the Texas Commission on Human Rights Act (Chapter 21 of the Texas Labor Code) and Federal and State whistle blower acts.

b. Declaration against Defendant's conduct for violation of Plaintiff's rights as secured by the Texas Commission on Human Rights (Chapter 21 of the Texas Labor Code)

c. Prejudgment and post-judgment interest as allowed by law;

d. Cost of suit herein; and

e. Such other relief to which Plaintiff may be justly entitled.

JAMES BOSWELL
PRO SE
414 MORRISON DRIVE
EULESS TEXAS 76039
817 896 4137 (Telephone)
JBOSRANGER @AOL.COM EMAIL

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered by:

Mail by certified mail, return receipt requested, postage prepaid, in a postpaid, properly

addressed wrapper, in a post office or official depository under the care and custody of

the United States Postal Service;

Hand-delivered

X Professional Processor

_______ Forwarded by next day receipted delivery service (federal express);

_______ Communicated by telephonic document transfer to the recipient's current tele copier number;

Coordinated on 11 th day of May 2014 for service.

JAMES BOSWELL

PRO SE
414 MORRISON DRIVE
EULESS TEXAS 76039
817 896 4137 (Telephone)
JBOSRANGER @AOL.COM EMAIL

**Exhibits:**

A: EEOC Charges

B: TCU's cease and desist civil rights no trespass order

C: Army Senior leader Account of Conspiracy

D Alleged Rape of TCU ROTC student

E: Alleged Rape of TCU student by three TCU athletes

F: Confession Testimony of Participation in Conspiracy

G. Same Letter to Several Authorities: Texas Rangers; Governor Perry; Texas Commissioner of Education; Secretary of the Army; Secretary of Education

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: James Boswell
414 Morrison Drive
Euless, TX 76039

From: San Antonio Field Office
5410 Fredericksburg Rd
Suite 200
San Antonio, TX 78229

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 31A-2014-00028 | Jaime Valdez, State & Local Coordinator | (210) 281-7661 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the allege discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that th information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance wit the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send yo You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Travis G. Hicks,
Director

Feb. 11, 2014
*(Date Mailed)*

Enclosures(s)

cc: TEXAS CHRISTIAN UNIVERISTY
Attn: HR Director
TCU Box 298200
Fort Worth, TX 76129

EEOC Form 161 (11/09) U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: James B. Boswell
414 Morrison Drive
Euless, TX 76039

From: San Antonio Field Office
5410 Fredericksburg Rd
Suite 200
San Antonio, TX 78229

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 31A-2013-00113 | Jaime Valdez, State & Local Coordinator | (210) 281-7661 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Travis G. Hicks,
Director

Feb. 11, 2014
*(Date Mailed)*

Enclosures(s)

cc: TCU
c/o McDonald Sanders
Attn: Mr. Rory Divin
777 Main St., Ste 1300
Fort Worth, TX 76102

McDonald Sanders
A Professional Corporation
ATTORNEYS AT LAW

777 Main Street, Suite 1300
Fort Worth, Texas 76102
817.336.8651
817.334.0271 Fax
www.mcdonaldlaw.com

PLAINTIFF'S EXHIBIT A pg 1

ROBERT L. GINSBURG
Direct Dial: 817.347.3644
Direct Fax: 817.347.3645
rginsburg@mcdonaldlaw.com

December 10, 2012

JAMES WEBB
RICK G. SORENSON
GREG S. HARGROVE
KEVIN D. KUENZLI
ROBERT L. GINSBURG
RORY DIVIN
STUART B. LUMPKINS, JR.
GEORGE C. HARATSIS
RANDYL MEIGS
JOHN W. WRIGHT
NICHOLAS BETTINGER
RICHARD C. DEBERRY
JENNIFER N. LITTMAN
RUSSELL A. DEVENPORT
BRANDON R. WADE
BRITTANI W. ROLLEN
JUSTIN P. HUSTON
CRAIG P. BARBOLLA
DONALD A. KACZKOWSKI
MICHAEL C. WURTZ
KIMBERLY A. COLLIER
ANNE MOBERG
KATE WELLS

***VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED***

Major James Boswell
414 Morrison Drive
Euless, TX 76039

Dear Major Boswell:

We are attorneys for Texas Christian University ("TCU").

I am writing in response to your letter of November 21, 2012, addressed to Dr. Victor J. Boschini, Jr., Chancellor, Mr. Clarence Scharbauer III, Chairman of the Board of Trustees, and the Board of Trustees of TCU and the enclosures.

First, with respect to your interest in employment at TCU, TCU does not maintain a position such as you are seeking and, at the present, is not adding any new positions. Second, regarding the whistleblower reprisal claim, such matter is strictly between you and the U.S. Department of Education.

Additionally, TCU respectfully declines your requests for meetings with Chancellor Boschini, Chairman Scharbauer, and the Board of Trustees.

You are correct that, on November 18, 1987, I sent you a certified letter notifying you to immediately cease and desist all communications with TCU, its faculty, administration and Board of Trustees. That notice still stands. Additionally, notice is hereby given that you are not to come on or about the TCU campus or any property owned by TCU without the express written permission of the Chief of Police of TCU. The TCU Police Department is being notified regarding the imposition of this no-trespass notice.

McDonald
Sanders
A Professional Corporation
ATTORNEYS AT LAW

PLAINTIFF'S EXHIBIT A pg 2

Major James Boswell
December 10, 2012
Page 2

Should you have any questions regarding this letter or need to communicate further regarding this or any other matter, such communication should be directed exclusively to me as TCU's legal representative.

Very truly yours,

Robert L. Ginsburg

RLG:ess
I:\09300\0004\LQ8853.DOCX

cc: Dr. Victor J. Boschini, Jr.
Chancellor
Texas Christian University

Mr. Clarence Scharbauer III
Chairman of the Board of Trustees
Texas Christian University

Steve McGee
Chief of Police
Texas Christian University

**DON DEARL EZELL**
**ALUMNUS, TEXAS CHRISTIAN UNIVERSITY**
6309 S. HULEN
FT. WORTH TX 76115

RECEIVED
AUG 08 2008
Labor Law 6

August 27, 1998

**CHAIRMAN & MEMBERS OF THE BOARD OF TRUSTEES**
Texas Christian University, Ft. Worth Texas 76129

At the request of former TCU faculty member and graduate student, Mr. James D. Boswell, I have thoroughly interviewed Mr. Boswell and examined a chain of unfortunate events which occurred at Texas Christian University. These events happened while Major Boswell was assigned as an Associate Professor of Military Science in the Army ROTC program at Texas Christian University. My curiosity and interest for fairness and justice for students and faculty, past, present and future, prompted several weeks of intense study, thus far at no expense. I have assessed and evaluated what I know to be a complete record of Mr. Boswell's case file. As member of the Addison Randolph Clark Society and in the interest of the integrity of our institution, I urge each member to consider my testimony concerning a very complex and difficult decision and conclusion involving an injustice which should be corrected and adjudicated favorably in Mr. Boswell's behalf.

The forgoing information is provided, only, to validate my competency as an ombudsman. A summary of my background includes: Retired Colonel with an active duty retirement from the United States Marine Corps; Attended Texas Christian University on a football scholarship, a letterman, earning a BS and Ed M degrees; Served as a Professor of Naval Science at Duke University; Coached football and taught high school; Served in the Directorate of Public Affairs, Secretary of Defense; Survived three tours in Vietnam; Commanded two Marine Regiments, the 11th Marine Regiment and 13th Marine Regiment; Authorized to wear 27 decorations with seven battle stars; Personal awards include the Legion of Merit, Bronze Star, Meritorious Service Medal, Naval Commendation Medal, Purple Heart, and two RVN Crosses of Gallantry.

Research included study of court documents currently on file in the Northern District Federal Court, Texas as of August 20, 1998, a DOD

13

EXHIBIT
B

military whistle blower reprisal investigation dated July 1995, the Army conclusion that Mr. Boswell's discharge from the Army is declared null and void dated May 1997, comparison of Mr. Boswell's case to other whistle blower cases, detailed analysis of literature concerning articles, government documents and reports, and consideration of numerous statements prepared by a variety of distinguished citizens, and recommendations from three General Officers and thirteen Colonels which categorically and emphatically, recommend Major Boswell for retention and promotion to Lieutenant Colonel.

I am prepared to join others in articulation of expert testimony. My distinct and affirmed conclusion is that Mr. James Boswell reported several actions of impropriety by the Professor of Military Science at TCU in 1986. He subsequently was wronged and harmed by the institutions of Texas Christian University and the United States Army. I recommend that Texas Christian University recognize and bear responsibility for these wrongful actions and bring this case to a satisfactory closure. I contend that there is not a more honorable and qualified leader, today, to command or train our sons and daughters for the next conflict, than Mr. James D. Boswell. Mr. Boswell is a graduate from the University of Texas, Austin (BS ED) and from the University of North Texas (Masters in Public Administration). I think we should be honored to have this courageous soldier return to TCU as an Army Lieutenant Colonel. Former Major Boswell served our country faithfully under the most difficult circumstances. In spite of institutional reprisal, Mr. Boswell continued to serve the military, with reduced rank and income, as a Sergeant in the Texas National Guard. His actions exemplify outstanding patriotism.

Respectively,

Don D. Ezell

DON DEARL EZELL
COLONEL USMC (ret)

RECEIVED
AUG 08 2008
Labor Law 6

cf:
Members, TCU Board of Trustees
TCU General Council
Chancellor, Texas Christian University

14

On 31 August 1986 I, RaeLynn Tucker, was invited to SGM Vyers apartment. During the time I was there he made advances towards me and we had intercourse without my consent. The circumstances surrounding this incident are lengthy and difficult to put in words. I was unable to handle the situation at the time because I was very confused and frightened. I had never done anything to entice the SGM into sexual relations. He was a man I respected and went to for advice concerning ROTC.

Afterwards, I chose not to tell anyone of the incident. I tried to carry on in ROTC without raising any suspicions. I also started talking to Maj. Boswell about ROTC. After Maj. Boswell and I started talking, I began to get the impression that SGM didn't like it. He would make comments; he called me into his office everytime I left Maj. Boswells. Without telling Maj. Boswell about the incident I tried to advise him not to trust SGM Vyers. When the allegations about Maj. Boswell began to arise and I found out about SGM Vyers involvement, I felt somewhat responsibl I still didn't want people to know about what happened but I did offer my support and friendship to Maj. Boswell.

During a close friend's visit in late November I told her what happened with the SGM. I asked for her trust but for reasons I can understand she felt she needed to report the incident without disclosing my name. During December and January, different military personnel found out including Maj. Boswell and one effort was made to contact me by Inspector General Leeper.

Eventually, I chose to make my statement because daily people accused me not always verbally of being guilty of something. I made contact with the Liberal Arts Dean and Dean of Students. On 27 January 1987, I gave my statement to Inspector General Leeper and representatives of TCU. I took a ~~[illegible]~~ polygraph on 29 January 1987 concerning the incident.

Throughout the 2½ years I was involved in ROTC, I saw alot of good and bad. But I think what happened to Maj. Boswell "took the cake." Maj. Boswell conducted himself in a totally professional manner. He exhibited a genuine concern for the cadets and the corps. He earned my respect as well as the respect of others. His situation is unfortunate and undeserved. I hope some justice can and will be served.

Rae Lyn Tucker

CAUSE NO. 141-233239-08

| | | |
|---|---|---|
| K. S. | § | IN THE DISTRICT COURT OF |
| VS. | § | TARRANT COUNTY, TEXAS |
| TEXAS CHRISTIAN UNIVERSITY; VICTOR J. BOSCHINI, JR.; NOWELL DONOVAN; RAY BROWN; DR. DANIEL B. MORRISON; KYLE BRENNAN; GARY PATTERSON; NEIL DOUGHERTY; GAYLE (GAY) BOYDSTON; SUSAN ADAMS; VIRGIL ALLEN TAYLOR; LORENZO LABELL JONES; AND SHANNON MONROE BEHLING | § | 141ST JUDICIAL DISTRICT |

FILED TARRANT COUNTY 2009 MAR 27 P 4:15 THOMAS A. WILDER DISTRICT CLERK

PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION

COMES NOW, K.S., (a twenty year-old, female, former TCU student) and Complains of Texas Christian University, Victor J. Boschini, Jr.; Nowell Donovan, Ray Brown, Dr. Daniel B. Morrison, Kyle Brennan, Gary Patterson, Neil Dougherty, Gayle Boydston, Susan Adams ("TCU Defendants"), Virgil Allen Taylor, Lorenzo Labell Jones, and Shannon Monroe Behling. In support of this Second Amended Original Petition, the Plaintiff would show this Honorable Court as follows:

I.

PARTIES TO THE ACTION

1. Plaintiff, K.S., is an adult individual who, at all times relevant hereto, attended Texas Christian University and who is currently residing in Minnesota. She is suing under her initials to protect her identity as a result of the sensitive and embarrassing nature of this rape case which caused a permanent sexually transmitted disease.

2. Defendant, Texas Christian University has been served and has answered.

3. Defendant Victor J. Boschini, Jr., has been served and has answered.

4. Defendant Nowell Donovan has been served and has answered.

5. Defendant Ray Brown has been served and has answered.

6. Defendant Dr. Daniel B. Morrison has been served and has answered.

7. Defendant Gary Patterson has been served and has answered.

8. Defendant Neil Dougherty has been served and has answered.

9. Defendant Kyle Brennan has been served and has answered.

10. Defendant Gayle Boydston has been served and has answered.

11. Defendant Susan Adams has been served and has answered.

12. Defendant Virgil Allen Taylor has been served and has answered.

13. Defendant Lorenzo Labell Jones was at all times relevant hereto a student athlete enrolled at Texas Christian University located in Tarrant County, Texas. Service is pending.

14. Defendant Shannon Monroe Behling was at all times relevant hereto a student athlete enrolled at Texas Christian University located in Tarrant County, Texas, has been served but has not filed an answer to date.

15. Venue is appropriate in Tarrant County, Texas because the events that form the basis of this suit occurred in Tarrant County.

16. Plaintiff contends that this case should be managed under a Level 3 Discovery Plan. TEX. R. CIV. P. 190.4.

## II.
## BACKGROUND

17. Plaintiff's lawsuit against all Defendants arises out of a drugging and gang rape she endured as an eighteen year-old scholarship freshman, at the hands of TCU athletes on October 13, 2006. The rape and events following were made possible by the failure of Texas Christian University ("TCU"), by way of its agents, servants and/or employees, to exercise ordinary care as required by law in the care and treatment of K.S. TCU Defendants misrepresented the characteristics, qualities and benefits of attending TCU and the presence of safeguards employed on campus as well as with respect to their recruitment policies, specifically as they apply to athletes. TCU Defendants failed to comply with the duties, represented and assumed by them, in their student handbook and promotional materials.

## III.
## FACTS

18. Plaintiff applied to and was accepted for 2006 fall enrollment at TCU. Plaintiff had attended Perpich Center for Arts Education, an arts high school in Minneapolis, MN, and was looking for a university with an excellent fine arts program. She was attracted to TCU because its representations of fact about its state-of-the-art fine arts facility, the quality and characteristics of its environment and campus life and because she was awarded a Nordan Scholarship of $10,000 a year for tuition to pursue a fine arts degree.

19. During the recruitment process, Plaintiff and her father visited the TCU campus and met/spoke with Ray Brown, the Dean of Admissions, Chancellor Boschini, Provost Donovan, Gayle Boydston. Such persons represented to Plaintiff and her father in conversation and in the Student Handbook that a TCU education offered certain values and benefits that made it attractive to her. They represented that the school was committed to personal integrity; it was concerned for its students well being; that is policies would not tolerate physical or emotional harm to others; and that the school and its faculty would act towards students with honesty, respect and trust. During multiple encounters with Dean Brown, he boasted about how TCU received big endowments for scholarships as well as athletics. Plaintiff's father was concerned about safety on campus and inquired specifically about the school's recruitment policies with respect to athletes. He was assured by Dean Brown and by Gayle Boydston that TCU recruited "good" young men of character and he was "not to worry." Plaintiff's father also reviewed TCU's website for information and postings about crime statistics on and around the TCU campus which, according to the website, were relatively low, with two forcible sex offenses on campus in 2005 and one forcible sex offense on campus in 2004. In reliance upon the representations of TCU and Boschini, Donovan, Brown and Boydston Plaintiff decided to obtain her education at TCU.

20. A couple of weeks after school began, sometime in late September, Plaintiff was introduced to

Defendants Taylor, Jones and Behling. Such individuals were student athletes who had been recruited to attend TCU and in fact, offered remuneration in the form of valuable tuition, room and board by the University in exchange for playing football and basketball for the school. The services of such athletes are a source of substantial revenue for the University, not only in ticket sales but also in promoting the schools reputation and giving by alumni. Plaintiff loaned Defendant Taylor money and gave him her phone number so he could contact her about repaying the borrowed money.

21. On October 13, 2006, Defendant Taylor called Plaintiff and told her he was ready to repay her the money he previously borrowed and that she should drop by his dorm room to obtain the money. Plaintiff went to Defendant Taylor's dorm room to obtain the money. Defendant Jones was present. She was offered a Powerade drink while she waited for Defendant Jones to get the money. Plaintiff began feeling dizzy and started to "melt" into the wall and the bed.

22. Plaintiff awoke the next morning with her clothes inside out and missing her bra. Defendant Taylor was asleep on his bed. Plaintiff left Defendant Taylor's dorm room still feeling "loopy" like she was dreaming.

23. On or about October 17, 2006, Plaintiff was experiencing painful physical symptoms for which she visited the school clinic and was diagnosed with herpes. In response to her reporting that the injuries were the result of the attack by prized athletes Taylor, Jones and Behling, the University Sexual Harassment Compliance Director, Susan Adams told Plaintiff that it would be in her best interests to "forget about" the incident and not report it to her parents or police. The herpes outbreak was so severe, however, that Plaintiff required hospitalization, at which time the doctor informed her that severe attacks of herpes like the one she was experiencing only happen when the disease is initially contracted. The hospitalization lasted over a week with Plaintiff on the verge of kidney failure as a result of the herpes outbreak.

24. When the individual faculty defendants learned of the accusations against their money making

athletes that might affect the profitability of the athletic programs, they conspired and began a course of conduct designed to cover up the incident by discouraging Plaintiff from reporting it or pursuing its investigation; and even hampering the investigation of police by advising students with potential knowledge of the events to "keep quiet." Such actions were reasonably calculated to make Plaintiff appear to be an untruthful or untrustworthy reporter of the event and protect the reputation and profitability of the athletic programs. Although the Chancellor, Defendant Boschini, pledged full cooperation, he would not allow Plaintiff to take a leave of absence for the remainder of the semester, resulting in Plaintiff having to withdraw as a TCU student. All of such actions caused Plaintiff additional mental anguish on top of the anguish of the attack itself.

25. Upon returning home, Plaintiff was diagnosed with clinical depression, a diagnosis for which she is still being treated. Plaintiff also continues to take medication for herpes, which she must continue to take the rest of her life.

## IV
## CAUSES OF ACTION.
### 1. NEGLIGENCE

26. At all times material to this cause of action, Defendant TCU held itself out to the public, and to Plaintiff, as qualified to provide a safe and secure educational environment; and, in that professional capacity, Defendant TCU offered its respective services to Plaintiff. The damages sustained by Plaintiff were proximately caused by the negligence and fraudulent misrepresentations of Defendant TCU. No acts or omission by Plaintiff caused or contributed in any manner to the brutal attack of K.S., or the subsequent attempted cover-up.

27. Institutions, such as Defendant Texas Christian University, owe students a duty to take reasonable precautions against foreseeable dangers, and to provide a reasonably safe environment for their students and employees. Further, the University has a statutory duty to have reasonable policies against sexual harassment including the procedures for reporting attacks to law enforcement and the

duty to assist (not discourage) students in reporting incidents to legal authorities. 20 U.S.C. §1092.

28. Defendants, Texas Christian University, through its employees, agents and representatives breached the duty owed to Plaintiff to take reasonable precautions against foreseeable dangers, and to provide a reasonably safe environment for their students and employees in each of the following ways:

a. Failure to properly exercise operational direction over the dorm room to which K.S. was lured and ultimately gang-raped on October 13, 2006;

b. Failure to assure adequate staff training to meet the behavior and social needs of all individuals;

c. Failure to implement a system to screen prospective faculty and staff training history;

d. Failure to supervise faculty and staff to ensure proper supervision, control, restraint and monitoring of student athletes;

e. Failure to properly train faculty and staff to screen the backgrounds (criminal and social) of student athletes that are recruited to play sports at the University;

f. Failure to properly train and/or educate the faculty and staff responsible for caring for recruiting student athletes with criminal and anti-social backgrounds;

g. Failure to appropriately monitor to ensure that student athletes are not brought on to campus without regard to the safety of other students;

h. Failure to implement safeguards for female students adequate to protect them from foreseeable criminal and anti-social activities;

i. Failure to ensure sufficient staffing was available to monitor the behavior of the students in the dormitories;

j. Failure to provide supervision and training in administration of counseling of rape victims following an attack (to wit: having a counselor encourage a victim to refrain from reporting her attack); and

k. Ratification of sexual misconduct of student athletes by University officials by failing to discourage such behavior in prior instances.

29. Plaintiff reserves the right to plead additional acts and/or omissions in the future. The negligent conduct of Defendant TCU was a proximate cause, singularly and/or in combination, of injuries and damages sought in this suit in an amount in excess of the minimum jurisdictional requirements of the court.

## 2. NEGLIGENT HIRING, SUPERVISION, AND/OR MANAGEMENT

30. Plaintiff would show that Defendant TCU, owed a duty to its students, including Plaintiff, to exercise ordinary care in the hiring of competent faculty and staff, and in the supervision and management of said Defendants' faculty and staff. Further, Defendants owed a duty to the students on campus, to recruit and properly supervise all student athletes.

31. Plaintiff would further show that Defendant failed to use ordinary care in these respects, including but not limited to, failing to properly investigate the criminal and social backgrounds of potential student athletes, failing to properly supervise said Defendants' personnel, failing to properly supervise student athletes, failing to implement adequate safeguards to prevent the drugging and gang-rape of K.S., and failing to provide adequate oversight for such faculty, staff and student athletes. These conditions created and ratified an environment in which misrepresentations to students and families were likely and reasonably foreseeable to occur, and which in fact did occur in the course of the transactions involving K.S. described hereinabove, which proximately caused the damages sustained by Plaintiff herein, and for which Plaintiff hereby sues.

32. Plaintiff reserves the right to plead additional acts or omissions in the future. The negligent conduct of Defendant TCU was a proximate cause, singularly and/or in combination, of the injuries and damages sought in this suit.

## 3. NEGLIGENT RECRUITMENT

33. Plaintiff would show that Defendant TCU owed a duty to its students to exercise reasonable care in recruiting student athletes, so as not to actively recruit athletes with violent criminal backgrounds to play sports at the University.

34. Plaintiff would further show that Defendant TCU breached that duty to exercise reasonable care in recruiting student athletes, by knowingly and/or negligently recruiting athletes with known histories of sexual misconduct and criminal misbehavior; to wit: Virgil Allen Taylor, Lorenzo Labell Jones, and Shannon Monroe Behling (among others not party to this suit). Such negligence was a proximate cause, singularly and/or in combination, of the injuries and damages sought in this suit.

## 4. FRAUD BY MISREPRESENTATION / DECEPTIVE TRADE PRACTICES

35. Plaintiff would show that Defendant TCU and Defendants Boschini, Donovan, Brown and Boydston, individually, made material representations about the characteristics and benefits of the educational and student life services provided by TCU and fraudulently misrepresented the presence of safeguards against recruiting athletes who might pose a risk of harm to other students by assuring Plaintiff and her family that athletes were recruited based on character as well as athletics. Specific representations, which include but are not limited to:

1. TCU offers an environment that is committed to personal integrity of its faculty and students;
2. TCU will not tolerate physical, emotional or intellectual harm to others;
3. TCU offers an ethically and value centered university experience;
4. TCU provides a supportive environment to students with assistance in dealing with problems;
5. TCU was dedicated to the success and wellness of its students

6. TCU recruited athletes to campus who were not only good athletes buts persons of integrity and character and did not pose a risk of harm to other students.

7. Defendant Brown, and Defendant Boydston, assuring Plaintiff and her father that TCU recruits "good Texas boys" and "not to worry" about the kinds of persons recruited to campus as student athletes.

36. Plaintiff would show that Plaintiff was a consumer of the services that TCU was a merchant of under the Texas Deceptive Trade Practices Act, Section 17.50 et seq. of the Texas Business and Commerce Code. The representations made by Defendants TCU, Boschini, Donovan, Brown and Boydston were false, were relied upon by Plaintiff and were a producing cause of the damages suffered by Plaintiff including the economic loss of the monies paid by Plaintiff for her education at TCU in the Fall Semester of 2006. Further, Plaintiff would show that such misrepresentations were made knowingly as defined by the act and Defendants are liable for her mental anguish. Such misrepresentations constitute common law fraud.

37. Plaintiff would show that Defendants, TCU, Boschini, Donovan, Boydston and Brown's misrepresentations regarding the presence of safeguards against recruiting violent or dangerous athletes were made recklessly without any knowledge of its truth and as a positive assertion. Defendants have no policies in place to screen the backgrounds (criminal and social) of student athletes they recruit, thus, any representations they make with respect to the athletes criminal and social backgrounds are made recklessly without any knowledge of its truth and as a positive assertion.

38. Such Defendants made these misrepresentations regarding the presence of safeguards against recruiting miscreant athletes with the intent that K.S. would act upon those misrepresentations and enroll at TCU and and Plaintiff did, in fact, act in reliance upon those misrepresentations by enrolling at TCU, thereby subjecting herself to the dangers associated with the unscreened and

unsupervised student athletes. Further, absent the aforesaid fraudulent misrepresentations by Defendants regarding the presence of safeguards against recruiting miscreant athletes, K.S. would not have enrolled at TCU.

39. These misrepresentations were a proximate and producing cause of Plaintiffs injuries and damages in an amount of the minimum jurisdictional requirements of this court.

40. Although Plaintiff should have given written notice of a DTPA claim at least 60 days prior to filing suit in accordance with Section 17.505(a) of the Texas Business and Commerce Code, notice was impracticable because the statute of limitations was about to run and, thus, according to Section 17.505(b) of the Texas Business and Commerce Code, was not required.

## 5. RATIFICATION

41. Plaintiff would show that Defendant TCU ratified and approved the misconduct of Plaintiff's attackers Taylor, Jones and Behling in their attack on Plaintiff, when after full disclosure of their conduct, TCU acted in the following ways:

a. by failing to report their misconduct;

b. by failing to investigate their misconduct and hindering the investigation by legal authorities;

c. by failing to take proper disciplinary action in response to their misconduct; and

d. by discouraging victims, specifically Plaintiff, from reporting the misconduct to her parents and/or the proper local authorities.

## 6. ASSAULT/BATTERY

42. Plaintiff would show that Defendants, Virgil Allen Taylor, Lorenzo Labell Jones, and Shannon Monroe Behling lured her to an on-campus dormitory under the pretext of repaying borrowed money, with the intent to rape her.

43. Plaintiff would further show that Defendants, Virgil Allen Taylor, Lorenzo Labell Jones, and

Shannon Monroe Behling executed a plan to drug K.S. by offering her a Powerade drink, laced with a drug – likely Rohypnol – which rendered her semi-conscious to unconscious.

44. Plaintiff would further show that Defendants, Virgil Allen Taylor, Lorenzo Labell Jones, and Shannon Monroe Behling then forcibly raped her, one after the other, in a ritual that they later referred to as "taking turns."

45. Plaintiff would further show that as a result of the forcible rape of her person she was infected with the Herpes virus and had to endure medical treatment for that infection, which was serious and life-threatening.

**7. CONSPIRACY TO DEFAME**

**AND INTENTIONALLY INFLICT EMOTIONAL DISTRESS**

46. Plaintiff would show that Defendants, Texas Christian University, Victor J. Boschini, Jr., Nowell Donovan, Kyle Brennan, Daniel B. Morrison, Gary Patterson, Neil Dougherty, Susan Adams, Gayle Boydston and Ray Brown, by way of employees, agents and/or representatives (Particularly Susan Adams), agreed in combination with each others to attempted to cover up the misconduct of the athletes and protect the schools reputation and financial gifts through the unlawful means of defaming Plaintiff and intentionally inflicting emotional distress upon her by urging her not to report the drugging and gang-rape – informing her that it would be "a lot easier for [her]" if she just kept quiet and by covering up the evidence of criminal behavior and advising athletes with potential knowledge of the events to "keep quiet" to authorities in order to make her appear to be an untruthful or untrustworthy reporter of the event. Overt acts were taken in furtherance of this conspiracy. It was, or should have been foreseeable to Defendants that such course of conduct would cause defamation and emotional distress to Plaintiff of an extreme and outrageous nature.

47. Plaintiff would further show that Defendants "know those guys were bad apples" (including a warrant out for Jones' arrest for another assault and battery) prior to her rape, and had had them

under investigation for sometime without taking safeguards to protect K.S., and /or other similarly situated students.

## V.
## DAMAGES

48. As a direct and proximate result of the previously discussed negligent and intentional conduct of Defendants, Plaintiff has suffered in each of the following ways and seeks compensation, past and future, for each of the following identified below:

A. Reasonable medical care and expenses in the past. These expenses were incurred by K.S. for the necessary care and treatment of the injuries resulting from the incident complained of herein and such charges are reasonable and were usual and customary charges for such services in Ft. Worth County, Texas;

B. Medical care and expenses, which in all likelihood will result from the incident complained of in the future;

C. Physical pain and suffering in the past;

D. Physical pain and suffering in the future;

E. Mental anguish in the past;

F. Mental anguish in the future;

G. Disfigurement and physical impairment in the past;

H. Disfigurement and physical impairment in the future;

I. Loss of earning and/or earnings potential in the past;

J. Loss of earnings and/or earnings potential in the future;

K. Tuition, room and boarding expenses; and

L. Lost value of the scholarship which she was unable to maintain following her rape.

49. Plaintiff seeks damages in the maximum amount of Ten Million Dollars. However, Plaintiff reserves the right to plead additional and more specific damages in the future as more facts become known, even through trial, and at this time Plaintiff has not been provided information about the net worth of Defendants to assist the jury in awarding punitive damages.

50. As a result of such acts, practices and/or omissions, Plaintiff sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiff hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

## VI.
## EXEMPLARY DAMAGES

51. Without waiving the foregoing, Plaintiff seeks exemplary damages pursuant to Texas Civil Practices and Remedies Code §41.003(1) and (3) and pursuant to the definitions of "Fraud," and of "Gross Negligence" as provided in §41.001(7)(B). Defendants' negligent acts and/or omissions constituted a conscious disregard of an extreme degree of risk, all of which led to the brutal gang rape of K.S.

## VII.
## DAMAGES CONSIDERED SEPARATELY

52. Plaintiff respectfully asserts her request that she be allowed to have the elements of damages considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate her for the injuries, losses and damages incurred, and to be incurred, and that each element of her damages be considered separately and individually, segregating the past and future losses, so that pre-judgment interest due may be computed.

## VIII.
## JURY REQUEST

53. Plaintiff requests a jury trial at this time.

## PRAYER

**FOR THESE REASONS,** Plaintiff prays that Defendants be duly cited to appear and answer the allegations asserted in this petition, and that upon final trial of this claim, Plaintiff be granted the following:

50. As a result of such acts, practices and/or omissions, Plaintiff sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiff hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

## VI.
## EXEMPLARY DAMAGES

51. Without waiving the foregoing, Plaintiff seeks exemplary damages pursuant to Texas Civil Practices and Remedies Code §41.003(1) and (3) and pursuant to the definitions of "Fraud," and of "Gross Negligence" as provided in §41.001(7)(B). Defendants' negligent acts and/or omissions constituted a conscious disregard of an extreme degree of risk, all of which led to the brutal gang rape of K.S.

## VII.
## DAMAGES CONSIDERED SEPARATELY

52. Plaintiff respectfully asserts her request that she be allowed to have the elements of damages considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate her for the injuries, losses and damages incurred, and to be incurred, and that each element of her damages be considered separately and individually, segregating the past and future losses, so that pre-judgment interest due may be computed.

## VIII.
## JURY REQUEST

53. Plaintiff requests a jury trial at this time.

## PRAYER

**FOR THESE REASONS**, Plaintiff prays that Defendants be duly cited to appear and answer the allegations asserted in this petition, and that upon final trial of this claim, Plaintiff be granted the following:

a. Judgment against Defendants, jointly and severally, for the full amount of their damages, special and general, in law and in equity;

b. Pre-judgment and post-judgment interest calculated at the market rate of interest or, in the alternative, at the statutory rate in order to fully compensate Plaintiff for the delay of receiving payment of their damages;

c. Unlimited exemplary damages, costs of Court; and

d. All other relief to which this Court may find Plaintiff justly entitled to receive.

Respectfully submitted,

THE KELLY LAW FIRM, P.C. &
FOREMAN, LEWIS & HUTCHISON, P.C.

L. Todd Kelly
State Bar No. 24035049
Heidi O. Vicknair
State Bar No. 24046557
Jennifer C. Best
State Bar No.24045493
One Riverway Drive, Suite 1150
Houston, Texas 77056
(713) 255-2055 Telephone
(713) 523-5939 Facsimile

S. Rafe Foreman
State Bar No.
Susan Hutchison
State Bar No.
Kern Lewis
State Bar No.
611 South Main Street
Westwood Center, Suite 700
Grapevine, Texas 76051
(817) 336-5533
(817) 336-9005

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on the 27th day of March 2009, a true and correct copy of the foregoing Plaintiff's Second Amended Petition was served on the following counsel of record:

George C. Haratsis
MCDONALD SANDERS, P.C.
777 Main Street, Suite 1300
Ft. Worth, Texas 76102

Susan Hutchison

FROM (FRI)MAR 27 2009 16:17/ST. 16:16/NO. 6349355579 P 1

# THOMAS A. WILDER – TARRANT COUNTY DISTRICT CLERK
## FAX TRANSMITTAL FORM

Attorney: Kern A. Lewis Bar ID# 12295320

Firm Name: Foreman, Lewis & Hutchison, P.C. Fax # 817.336.9005

Subscriber Number: 95000150 Telephone # 817.336.5533

Representing: X Plaintiff/Petitioner ____ Defendant/Respondent ____ Other

Authorization: I authorize the filing of the below named document(s) and I further authorize my checking account to be debited in accordance with my subscriber's agreement.

Signature:

Total number of Pages (including this form) ______ Case Number (If not new case) 141-233239-08

This document should be filed in:
X Civil (For Civil or Criminal please send your fax to: 817-850-2928)
____ Criminal

____ Family (For Family or Juvenile please send your fax to: 817-850-2927)
____ Juvenile

If you ever have a problem, please call Sue at 817-212-7011 or Willie at 817-884-2009

____ New Case Filing

____ Motions and other pleadings WITH FEES: ____

X Motions and other pleadings WITHOUT FEES:

FILED TARRANT COUNTY
2009 MAR 27 P 4:42
THOMAS A. WILDER DISTRICT CLERK

**REQUEST FOR SERVICE DOCUMENTS** (Do you want us to issue citations or other documents?)

| Type of service document | Name of person to be served | Address | Type of service (constable, Private, certified mail, etc) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**James G. Bright**
ACofS G3/PTM
III Corps and Fort Hood
Fort Hood Texas 76544
8 March 1999

RECEIVED
AUG 08 2008
Labor Law 6

Assistant Secretary of Army
Manpower and Reserve Affairs
111 Army Pentagon, Washington D.C. 20310-0111

Subject: Reopen case Docket # AC 95-08841: Army Board for Correcting Military Records, Army Officer Major James Boswell

**Dear Honorable Sara Lister:**

I hope this letter will correct an injustice. It is on behalf of James Boswell who received retirement orders December 17 1998.

By way of introduction, I'm LTC James G. Bright, Texas Army National Guardsman, Title 10 AGR. Some few years' back, I was assigned as the executive officer for MG Jack D'Araujo, the Director of the Army National Guard and had the distinct pleasure on occasion to interface with you on Army issues. I recently declined acceptance for Battalion Command and I regret, even though I was under orders, that I was a participant in the University's and Army conspiracy to remove this outstanding officer from an ROTC assignment and from active duty. After learning the truth, I am committed to just and positive action.

My first AGR assignment was as an Associate Professor of Military Science, Texas Christian University. In the fall of 1986 Major Boswell and I were colleagues. I witnessed a gross injustice perpetrated against Major Boswell and his family. My Professor of Military Science, the Dean for Army ROTC Affairs, and former commander of Major Boswell conspired with an intent to harm Major Boswell. Major Boswell shows evidence of perjury and reprisal from his TCU and former commander concerning their testimony at the Army's retention hearing. Due to conduct unbecoming of an officer, issues as an adulterous affair, there is ample motive why the conspirators wished harm on Major Boswell. Truth may have ended the University and military official's careers.

It is my testimony that Major Boswell's due process was violated and Army and Texas Christian University officials failed in their assessment and proceeded to hastily cover-up the situation. Major Boswell, tenaciously, reported violations of military and university policy dealing with sexual harassment and misconduct, discrimination concerning minority students and cadre, and misapplication of fiduciary property.

EXHIBIT
A

Subject: Reopen case Docket # AC 95-08841 Page 2

Major Boswell epitomized character, moral courage and dedication. An Army Inspector General and a DOD Whistle Blower Report reflect that Major Boswell addressed violations to the University and Army violations. Major Boswell, in fact, confided with me before reporting the offenses. He swore a solemn oath to support and defend the constitution. When the chips were down, the University and Army Chain of Command appeared to ignore compliance with law. Major Boswell was the only one of courage to do his duty at great expense to his career and to his family. Now, twelve years later, partial justice prevails with the Army's Chief, Appeals and Correction Branch letter of notification, subject ABCMR Proceedings, dated December 14, 1998.

I submit to you that Major Boswell's retirement has been miscalculated: In equity, he deserves direct promotion and retirement at minimum in the grade of 0-5 (Lieutenant Colonel). Major Boswell's attorney, via letter to the ABCMR, reveals the correction is shallow. Removing one report card fails to compensate for lost opportunity, schooling, awards and damages. In Major Boswell's case, it is impossible for a special promotion board to do justice based on the record.

Now, I firmly believe there is a criminal connection between three events: (1) Reprisal - a black Sergeant Major's removal from TCU (2) Major Boswell's tragedy and(3)the sudden and unexpected disappearance from TCU of a black supply sergeant. He had completed an approximate eighteen years of military service.

It is significant that the former Chairman of the United States Senate and Committee on Armed Services writes the ABCMR requesting "careful review and serious consideration in light of strong public policy" and that several General Officers recommended Major Boswell be promoted. Meanwhile while soldiers make sacrifice, TCU reveals, through discovery, that the University is enriched through federal funds of an estimated six million dollars per year. Please review the enclosures and reopen this case. Thank you for your consideration.

Sincerely,

James G. Bright
Lieutenant Colonel, Infantry
Chief of Training

RECEIVED
AUG 08 2008
Labor Law 6

11 enclosures
cf: Senators Kay Hutchison and Phil Gramm

**UNITED STATES ARMY**
**JUNIOR RESERVE OFFICERS' TRAINING CORPS**
**SECOND BATTALION "BRONCHOS"**
**ODESSA HIGH SCHOOL**
**1301 N. DOTSY AVE. ODESSA, TX 79763**
**(432) 456-2118 FAX (432) 456 5264**
E MAIL james.boswell@ectorcountyisd.org

April 2, 2012

**John M. McHugh**
**Secretary of the Army**
**101 Army Pentagon**
**Washington D.C. 20310-0101**

Our country is dealing with the crises on health care, financial and investment reform, productivity with oil and gas and environment issues. May we take a more serious look at education. The grievance system does not work, the court system is inefficient and unaffordable, and the School Boards are politicized. Who is the victim? Our President is asking for bold reform. We remember our country pulling together during 9 – 11, and that's what happened in Odessa Texas March 30, 2012. Students, parents, law enforcement, administrators, teachers endured a crises with a lock down. The Odessa American covered the story (ECISD, OHS lock down, 30 March 2012), and one quote is : "For parents Samantha and Earnest Washington, the lockdown just furthered solidified their stance on withdrawing their two daughters from school. Citing overcrowding, the Washington's said they were on their way to pick up their daughter's transcripts and withdraw them when the police showed up at the scene".

It is a frustrating year, and my boldness is communication with the Ector County District Attorney via three letters and request for Texas Ranger intervention. Because ECISD continues to violate law, I come to work today with real humility, coupled with a tremendous sense of urgency. My testimony will honestly reflect that teachers, and the teaching profession, have been beaten down. I can show extensive stress management and a related fatality. Please stop, and let's find common ground and be very proud of our teachers' hard work and commitment, often in very challenging circumstances. Most administrators view our teachers, as so many of you

do, as nation-builders—but often we are not treated as such. As a leader with the Department of Education and Department of Defense, I have a unique perspective similar to the DOD's Troop for Teachers program. We must draw in experience and where corruption exist, **"external"** law enforcement. In March 2012, President Obama proposed initiatives to empower states and districts that commit to pursuing bold reforms at every stage of the teaching profession. This new program is called RESPECT (Recognizing Educational Success, Professional Excellence, and Collaborative Teaching). It makes a lot of sense.

No political party and no President will hardly make a difference until we examine the road blocks. Educational Success is all about improving student outcomes, and our country is about hope, dreams, opportunity and growing. A unique army way for growing and improvement is accomplished in an After Action Review (AAR). Please join this process, from your perspective, and have the thought-provoking discussions with your peers and your staff, then generate action. A decade ago, the Governor of Texas was asked to record the attached affidavit in the legislative record. Responsible agencies owe the Armed Services Committee Minority ranking member, Senator Sam Nunn, an answer: "Mr. Boswell's case merits careful review in light of a strong public policy against whistle blowing retaliation". If the premise is true that Professional Excellence means that we will promote continuously improving practice—and recognize, reward, and, most importantly, learn from great teachers and school leaders, then may get humble and stay there. It is not easy for an Army Ranger to "beg" but some times Love for Country and GOD gets to the best of "you". My background is experience, especially with adversity and corruption, and this now has more credibility than my credentials, teaching degree at the University of Texas, MPA at University of North Texas, service in Five Army Divisions. As a company commander of a mechanized Infantry Company at Ft. Hood Texas, my company was selected to accept 72 high school drop outs, one of which had a seventh grade education. I remember him well because he had a rope around his neck and was standing on a 55 gallon GI can and he attempted to commit suicide. My cadre wanted to remove him and I wanted to give him an opportunity.

I strongly believe there is a strong correlation between Department of Defense and Education: We serve each other. DOD supports the Armed Service academy's , University ROTC, High school JROTC and that is my tie in. I am a JROTC senior army instructor. I teach citizenship and army values, including **respect**. Institutions produce quality leaders: Quality leaders preserve our defense. Both institutions can permeate an wholesome productive safe nourishing environment. We call it a home – an extended family.

Some students severely challenge Maslow's law because they are without the basics. My program includes approximately 100 high school and 50 junior high cadets. Statistics of the 100 include: 81 at risk, 53 economically disadvantaged, 4 pregnant or moms/dads, 3 homeless, 2 LEP (limited English proficiency) 1 ESL (English as a second language),and 25 special education, and some with out legal parents. JROTC helps in any way. Now look at benefits, resources and travel buses for a field trip – it spells and smells fraud.

My sworn affidavits, first to Governor Bush, and now this one to Governor Perry, make similar observations and express compelling interest. We have an embarrassing, poor record in Texas and we need focus. I personally request the intervention of the Texas Rangers and the Office of the District Attorney to conduct inquiry on some of the student harm. As the victims in the Penn State scandal, it takes time for truth to be revealed. The ROTC cadet at Texas Christian University should be compensated. This would bring justice, integrity, and closure to a dark page in TCU and ROTC Cadet Command history. The victim statements are attached in the TCU file. Some Chairman of the Board of Trustees and DOD high ranking officer could apologize to my daughter, who now is a mother of two. She was nine years old when she endured a frightening experience similar to the experience the students had during yesterday's lock down. In Fort Worth, Texas, she was placed in the Army sedan, fearing for her life, as dad was being escorted for psychiatric evaluation shortly after providing to the Inspector General documents containing impropriety, including a TCU instructor/cadet alleged date rape and $ 14,000 receipts of misapplication of fiduciary property a violation of Texas law 32.45. One tries to forget the bad

times but the same alleged bullying treatment occurred at OHS with administrators. This same law was violated and on March 6, 2012 the School Board ruled. No one likes to experience loss: Loosing quality cadets, and for that matter, caring counselors, creative teachers, fair administrators takes a toll.

The educators speak of plain messages of what we need to do and compare us to high-performing countries, countries who have more professional autonomy and accountability, more collaboration, and more high-quality preparation and professional development for teachers than we do in the U.S. There is evidence that they do a better job of recruiting talented teachers and school leaders. And they do a better job of preparing, supporting, and retaining them in the classroom.

We must desire change. That is the only way for real change to grow roots and take hold in our nation's classrooms. In this regard, I filed seven grievances between October 2, 2011 and April 1, 2012. If they were redacted to prevent privacy violation and published, America could see a glimmer of truth and the roadblocks teacher face. Google Odessa American and search for ECISD and read the articles for the last year such as OHS teacher of the year resigns and her quote "them" verses "us". Ask her who is the evil entity? This is like a spreading cancer surely prevalent in other Districts. If teachers are frustrated, could you draw a connection with why OHS students are frustrated? And why would a student or former student choose crime - an avenue of violence? The Odessa American's article on lock down was very complementary and objective since it addressed gangs and fights. Regardless statistics for pregnancy, drop out rate, teenage crime rate in this community are startling. Most teachers do not want to leave: They want to be empowered to make a difference and to produce a safer environment. Our Texas Higher Education Coordinating Board appears to be a weak advocate of sufficient authority. Texas Education Code ,Sec 61.001 is suppose to provide leadership to resolve problems.

My documented complaints include teacher fear of reprisal and violation of constitution 1st amendment and 4th amendment rights charging school administrators of misconduct and bullying. Our country is faced with deciding the constitutionality with respect to health care reform. The

constitutionality for education issues in Texas is the greatest road block to education reform, so much, that only school districts who operate lawfully need to be recipients. Laws favor the administration and the administration's way is protect the status quo and abuse of power. Bold intervention is needed so that we must tackle these challenges. Teacher associations such as TSTA, working as strong partners with the employees, can make a difference and the Commissioner of Educations at the State and Federal level must be proactive and embrace educational success to improve student outcomes. Texas Commissioner should examine my case in great detail and then suggest legislation and an education swat team. I will be happy to lead it.

Collaborative teaching means that we will concentrate on shared responsibility but like wise if we want professional excellence, and a world class education system, then promote continuously improving practices and defend and protect great teachers and school leaders from resigning due to hostility and intimidation. Focus on the refrigerator and the gold stars and recognize, reward, and, most importantly, learn. Produce a retention officer at every ISD who works for the Federal government ort TSTA, not the state. Successful collaboration is something opposite of what the OHS teacher of the year writes in her interview with the media - "them" verses "us": Doesn't it mean to establish schools where the trust between teacher and principal is paramount and where principals and teachers work and learn together in communities of practice. It means to hold each other accountable, and lift each other to new levels of skill and competence. It also means the school board can't rubber stamp arbitrarily a District decision. It means top – tier managers may have to leave the Austin capital and defend a teacher, way out west, raising complaints. What a shame that Texas has diminished teacher empowerment one step at a time. But now give it back in a class action bold reform preparing education employees for success. You have over 100 pages of complaints to the Office of the District Attorney and grievances. Your investigation and inquiry will support creating a professional career continuum with competitive compensation, and will strengthen the teachers and leader work force. Remedy will support keeping the best educators to the students and communities who need them the most. An ambition program will put a stop to the employee exodus, and

will have a goal of trying something in the teaching profession, which has never been tried before in the United States. Maybe there are lot of Texas schools who have one fight a week, but I was in the Army for 22 years in good leadership units and can count the annual number of physical conflicts on one hand.

We realize that high-performing countries do not have a culture that would cause good teachers to leave or abandon the classroom—the work they love most and do best, as so articulated by OHS's teacher of the year in her published resignation letter. With teaching morale low, and with a real need to recruit about one million more teachers into the profession over the next four to six years, may we examine what teachers believe to be the heart of the problem as articulated in local TSTA surveys. Most of our leaders agree about challenges and drive for transformational change. They are offended by the low class leadership and intimidation practices. All the Secretary of Education statements about they (the other countries) need to be replaced with "Texas does". For example, "they do" (Texas does) a better job of recruiting talented teachers and school leaders, and "they" do a better job of preparing, supporting, and retaining them in the classroom. When you have roots in Texas, you like taking the lead. Start, by asking "why is Texas public school so severely handicapped. Here is one analogy. October 12, 2012, I received my first letter of reprimand in my entire career (Army and Education). I complained about dying programs The COOP and the misapplication of grant money concerning 35 computers and placing the instructor on an excess leave status; the firing of the AG teacher after she complained of lack of support; placing teachers on administrative leave after they complained. It is the second time (the first at TCU) where I was escorted from the premise and had to turn in my keys. Just like America calls on the soldier, especially the marine, the navy seal, the green beret and army ranger, and the fighter pilot, and the coast guard rescue swimmer, we must have an education swat team and rescue the teacher who defends the student, and confronts trouble. Now, each of you, please zero in. Here is why? America is asking you to. Air Force Pilot **POW, Mr. Tom Lancaster** requested a favor. The Texas Commissioner of Education and Texas Coordinating Board can allocate legal funds and take this cause, as one setting precedent, to the highest court in the country. The Secretary of

Education and Department of justice can review the civil rights violation written by my JROTC Hispanic cadet, on February 1, 2012, relating reasons for his school drop out. He writes: "this class (JROTC) for the longest was the only reason I would attend school". Grievance number 5 of 7 deals with administrators bullying.

In the three cases concerning retaliation, Governor please ask TCU who chose retaliation as a mode of operation, to return the 6,000,000 annually (See affidavit) or compensate and apologize. When the education institutions accept the money, yet will not follow Federal and State statutes, and School Board rules, it gives an appearance of fraud. President Obama's five billion dollar program to strengthen and elevate the teaching profession in America, yes is necessary, may help with teaching low. We have a real need to recruit about one million more teachers into the profession over the next four to six years. Conducting and publicizing the lessons learned in each of the retaliation cases, loss of certification, placing schools on probation, redefining school immunity will have a much great effect.

I request TCU and ISD certification be placed on hold and put in a probation status until each addressee has completed its inquiry and that certifications and bonuses be revoked while on a probation status. I believe my letter to the Ector County District Attorney's office has serious allegations, and are made in good faith. Each time a complaint is made the response is retaliation. I went to the President of the School Board August 17, 2011 and filed 7 grievances from October 2, 2011 thru March 26, 2012 with Ector County School District, 3 letters with the Ector County District Attorney and one with the ECISD police. The packet attached will show dates, times and reprisal official misconduct, oppression and reluctance for accountability. The record reflects adverse personnel action, violation of 1st and 4th amendment rights, and defamation to character.

Tex. Education Code § 38.016 says (d) The board of trustees of each school district shall adopt a policy to ensure implementation and **enforcement** of this section. And it says (e) An act in violation of Subsection (b) does not override the immunity from personal liability

granted in Section 22.0511 or other law or the district's sovereign and governmental immunity. Similar law equates to Texas state and public universities.

The letter to the school board addressed multiple violations of the Education Code, Title 2. Public Education Subtitle G. Safe Schools Chapter 37. I believe the ECISD internal auditor did validate the mishandling of funds and the ECISD did remove one Principal but an accounting error still exist – cadets will need their $ 1000 and reimbursement for all travel. Your inquiry will show complainant had to turn over building keys, was removed from campus, denied participation from community events e.g. the air show and cadets were profiled and not aloud to attend a pep rally. In total, ECISD action caused loss of reputation in my industry, damage to future employment, disparate treatment, and constitutional violations and could be the next reason for a student to loose control, go ballistic, and engage in crime and violence.

Kind of like repeated offenders for rape, one crime may open up to another. Like the Penn State controversy, this crime went on for years and is just now being investigated. I am certain the Texas Christian University Trustees did not do enough especially with regard to the school police investigation of the JROTC cadet involved with the abortion and concerning the disappearance of a key Afro American witness to the case, Dunlap. If you were to consider the continuing violation doctrine, in this case I reported also the felonious violation of Texas Law 32.45 involving Texas Christian University and an instructor date rape of my JROTC cadet to TCU authority and simultaneously to the Army Inspector General. In both similar cases, TCU and ECISD local officials committed alleged crimes and are unwilling and unable to maintain the law and order at the expense of Education in Texas. Students and employees remain unprotected; Crimes remain unresolved. Our country needs you and more of you. Please eliminate the fear of reprisal in the public and private education system in Texas. Please revoke TCU's General Counsel's order to silence and the Department of Army Colonel's threat to kill me. Texas can be more competitive, more accountable, and can produce safe and productive education, free from "fear" of reprisal. In both cases, local administrators violate law concerning

bullying and intimidation, demonstrate corrupt practices, and adversely impact on drop outs and the suicide prevention programs. Loosing quality cadets – future leaders of America - in both environments is harmful to the victims, to the community, and to our Country's education program.

Your inquiries will be so greatly appreciated. I look forward to learning and sharing with all of your investigators. I had the honor and privilege of shaking your hand, Governor Perry and as an AG supporter, you can understand why I was distressed about the dying animals from negligence and lack of School support. Each time you make an appearance, you honor us with your presence. And your gift to teachers of your time and energy means more to us than you can know.

Enclosures

James Boswell
Senior Army Instructor
Army Major (Ret)

A-23

UNITED STATES ARMY
JUNIOR RESERVE OFFICERS' TRAINING CORPS
SECOND BATTALION "BRONCHOS"
ODESSA HIGH SCHOOL
1301 N. DOTSY AVE. ODESSA, TX 79763
(432) 456-2118 FAX (432) 456 5264
E MAIL james.boswell@ectorcountyisd.org

TO WHOM IT MAY CONCERN

On 11 April 2012, I spoke with Hank Whitman (1 512- 424- 5607) of the Texas Rangers and he acknowledged receipt of my letter dated April 2, 2012. Ranger Williams spoke with me concerning my allegations, and I promised a follow up communication concerning non renewal of my contract pending for School Board decision, Tuesday April 17, 2012.

On 12 April 2012 (0730), I spoke with Vickie. Lafollette@usacc.army.mil 1-502-624-1710 and she informed me that she was an Inspector General and that Major General Smith was in receipt of my packet, also dated 2 April 2, 2012 and that it was also forwarded to the DA for investigation consideration on my complaint involving a General officer and TCU.

On 12 April 2012 (0800), I interviewed with Texas Ranger brian.burney@dps.texas.gov specifically about my allegations which I believed to be criminal and unlawful. Mr. Burney agreed to forward a package to ECISD and one to TCU.

On 12 April 2012 (1200), I interviewed with LTC Pat Lesley (1 704-608- 3972) from 5th Brigade Cadet Command. He met with Mr. Mendez, Mr. Quintela, Mr. Berzosa, and MSG James and offered assistance on behalf of Commander, 5th Brigade.

Thank you.

James Boswell

James Boswell
Senior Army Instructor
Army Major (ret)

**UNITED STATES ARMY**
**JUNIOR RESERVE OFFICERS' TRAINING CORPS**
**SECOND BATTALION "BRONCHOS"**
**ODESSA HIGH SCHOOL**
**1301 N. DOTSY AVE. ODESSA, TX 79763**
**(432) 456-2118 FAX (432) 456 5264**
E MAIL james.boswell@ectorcountyisd.org

**Rick Perry**
**Office of the Governor**
**P.O Box 12428**
**Austin, Texas 78711**

April 2, 2012

Our country is dealing with the crises on health care, financial and investment reform, productivity with oil and gas and environment issues. May we take a more serious look at education. The grievance system does not work, the court system is inefficient and unaffordable, and the School Boards are politicized. Who is the victim? Our President is asking for bold reform. We remember our country pulling together during 9 – 11, and that's what happened in Odessa Texas March 30, 2012. Students, parents, law enforcement, administrators, teachers endured a crises with a lock down. The Odessa American covered the story (ECISD, OHS lock down, 30 March 2012), and one quote is : "For parents Samantha and Earnest Washington, the lockdown just furthered solidified their stance on withdrawing their two daughters from school. Citing overcrowding, the Washington's said they were on their way to pick up their daughter's transcripts and withdraw them when the police showed up at the scene".

It is a frustrating year, and my boldness is communication with the Ector County District Attorney via three letters and request for Texas Ranger intervention. Because ECISD continues to violate law, I come to work today with real humility, coupled with a tremendous sense of urgency. My testimony will honestly reflect that teachers, and the teaching profession, have been beaten down. I can show extensive stress management and a related fatality. Please stop, and let's find common ground and be very proud of our teachers' hard work and commitment, often in very challenging circumstances. Most administrators view our teachers, as so many of you

**UNITED STATES ARMY**
**JUNIOR RESERVE OFFICERS' TRAINING CORPS**
**SECOND BATTALION "BRONCHOS"**
**ODESSA HIGH SCHOOL**
**1301 N. DOTSY AVE. ODESSA, TX 79763**
**(432) 456-2118 FAX (432) 456 5264**
E MAIL james.boswell@ectorcountyisd.org

**General Martin Dempsey**
**Chairman of the Joint Chiefs of Staff**
**9999 Joint Staff Pentagon**
**Washington, DC. 20318 - 9999**

April 2, 2012

Our country is dealing with the crises on health care, financial and investment reform, productivity with oil and gas and environment issues. May we take a more serious look at education. The grievance system does not work, the court system is inefficient and unaffordable, and the School Boards are politicized. Who is the victim? Our President is asking for bold reform. We remember our country pulling together during 9 – 11, and that's what happened in Odessa Texas March 30, 2012. Students, parents, law enforcement, administrators, teachers endured a crises with a lock down. The Odessa American covered the story (ECISD, OHS lock down, 30 March 2012), and one quote is : "For parents Samantha and Earnest Washington, the lockdown just furthered solidified their stance on withdrawing their two daughters from school. Citing overcrowding, the Washington's said they were on their way to pick up their daughter's transcripts and withdraw them when the police showed up at the scene".

It is a frustrating year, and my boldness is communication with the Ector County District Attorney via three letters and request for Texas Ranger intervention. Because ECISD continues to violate law, I come to work today with real humility, coupled with a tremendous sense of urgency. My testimony will honestly reflect that teachers, and the teaching profession, have been beaten down. I can show extensive stress management and a related fatality. Please stop, and let's find common ground and be very proud of our teachers' hard work and commitment, often in very challenging circumstances. Most administrators view our teachers, as so many of you

**UNITED STATES ARMY**
**JUNIOR RESERVE OFFICERS' TRAINING CORPS**
**SECOND BATTALION "BRONCHOS"**
**ODESSA HIGH SCHOOL**
**1301 N. DOTSY AVE. ODESSA, TX 79763**
**(432) 456-2118 FAX (432) 456 5264**
E MAIL james.boswell@ectorcountyisd.org

Texas Rangers
PO Box 4087
Austin, Texas 78773-0600

April 2, 2012

Texas schools can not violate Texas Law 32.45 concerning misapplication of fiduciary property nor Texas Whistle Blower Law, Texas Govt Code 554.0035. Complainant is frustrated seeing our youth harmed and in good faith reports punishable felony offenses. The illegal private fund raiser was stopped after going to the District Attorney, but at a cost. The ECISD Odessa High School cadet activity fund has not received the $ 1000 obligated by an ECISD official but denied by another since removed. Each time I have levied a complaint, caring for a student, the response was retaliation. I went to the President of the School Board August 17, 2011 and filed 7 grievances from October 2, 2011 thru March 26, 2012 with Ector County School District, 3 letters with the Ector County District Attorney and one with the ECISD police. The packet attached will show dates, times and reprisal official misconduct, oppression and reluctance for accountability. The record reflects adverse personnel action, violation of 1st and 4th amendment rights, and defamation to character.

Tex. Education Code § 38.016 says (d) The board of trustees of each school district shall adopt a policy to ensure implementation and **enforcement** of this section. And it says (e) An act in violation of Subsection (b) does not override the immunity from personal liability granted in Section 22.0511 or other law or the district's sovereign and governmental immunity. Similar law equates to Texas state and public universities.

The letter to the school board addressed multiple violations of the Education Code, Title 2. Public Education Subtitle G. Safe Schools Chapter 37. I believe the ECISD internal auditor did validate the mishandling of funds and the ECISD did remove one Principal but an accounting error still exist – cadets will need their $ 1000. Your inquiry will show complainant had to turn over building keys, was removed from campus, denied participation from community events e.g. the air show and cadets were profiled and not aloud to attend a pep rally. In total, ECISD action caused loss of reputation in my industry, damage to future employment, disparate treatment, and constitutional violations.

Kind of like rape, one crime may open up to another. Like the Penn State controversy, this crime went on for years and is just now being investigated. I am certain the Texas Christian University Trustees did not do enough especially with regard to the school police investigation of the

JROTC cadet involved with the abortion and concerning the disappearance of a key Afro American witness to the case Dunlap. If you were to consider the continuing violation doctrine, in this case I reported also the felonious violation of Texas Law 32.45 involving Texas Christian University and an instructor date rape of my JROTC cadet to TCU authority and simultaneously to the Army Inspector General. In both similar cases, TCU and ECISD local officials committed crimes and are unwilling and unable to maintain the law and order at the expense of Education in Texas. Students and employees remain unprotected; Crimes remain unresolved. Our country needs you and more of you. Please eliminate the fear of reprisal in the public and private education system in Texas. Please revoke TCU's General Counsel's order to silence and the Department of Army's threat to kill me if I broke my silence. Texas can be more competitive, more accountable, and can produce safe and productive education, free from "fear" of reprisal. In both cases, local administrators violate law concerning bullying and intimidation, demonstrate corrupt practices, and adversely impact on drop outs and the suicide prevention programs. Loosing quality cadets – future leaders of America - in both environments is harmful to the victims, to the community, and to our Country's education program.

Your inquiries will be so greatly appreciated.

Documentation is attached.

James Boswell
Senior Army Instructor
Army Major (Ret)

**UNITED STATES ARMY**
**JUNIOR RESERVE OFFICERS' TRAINING CORPS**
**SECOND BATTALION "BRONCHOS"**
**ODESSA HIGH SCHOOL**
**1301 N. DOTSY AVE. ODESSA, TX 79763**
**(432) 456-2118 FAX (432) 456 5264**
E MAIL james.boswell@ectorcountyisd.org

April 2, 2012

**Secretary Arne Duncan**
**U.S. Department of Education,**
**400 Maryland Avenue, SW**
**Washington, D.C. 20202**

Our country is dealing with the crises on health care, financial and investment reform, productivity with oil and gas and environment issues. May we take a more serious look at education? The grievance system does not work, the court system is inefficient and unaffordable, and the School Boards are politicized. Who is the victim?

Our President is asking for bold reform. We remember our country pulling together during 9 – 11, and that's what happened in Odessa Texas March 30, 2012. Students, parents, law enforcement, administrators, teachers endured a crises with a lock down. The Odessa American covered the story (ECISD, OHS lock down, 30 March 2012), and one quote is: "For parents Samantha and Earnest Washington, the lockdown just furthered solidified their stance on withdrawing their two daughters from school. Citing overcrowding, the Washington's said they were on their way to pick up their daughter's transcripts and withdraw them when the police showed up at the scene".

It is a frustrating year, and my boldness is communication with the Ector County District Attorney via three letters and request for Texas Ranger intervention. Because ECISD continues to violate law, I come to work today with real humility, coupled with a tremendous sense of urgency. My testimony will honestly reflect that teachers, and the teaching profession, have been beaten down. I can show extensive stress management and a related fatality. Please stop, and let's find common ground and be very

# AFFADAVIT

Texas Christian University Deliberate Indifference

By Herff L. Moore, PhD

1. At the request of former Texas Christian University (TCU) faculty member and graduate student, Major James D. Boswell, I have thoroughly interviewed Major Boswell (retired) and examined his more than ten court cases and over 1000 pages of documents and recent literature. I find that deliberate indifference by Defendant, Texas Christian University (TCU) tends to facilitate additional incidents of Sexual Harassment and Assault, causing injuries to current and former students as well as the community. The most recent Sexual Harassment and Sexual Assault case KS verses TCU has nullified the conveyance for needed improvements and perception of growth and progress. In this vein, I asked the Fort Worth Commission of Texas Human Relations s evaluate TCU's charter for operating a business in Fort Worth based on the following:

Appendix 1. This Appendix is entitled "Major Boswell packet concerning employment at TCU" and contains seventeen sworn Affidavits and Statements ranging from pages F182 through F244. A prior TCU victim uses her initials ("R.T.") to keep her identity unknown, as an ROTC female victim who reported allegations of rape by a TCU faculty member in 1986. She was also a student in Major Boswell's class. These Statements covering topics of racial profiling, sexual assault, and fraud, verify violations of lawful provisions for required promptness and thoroughness under Title VI and VII of the Civil Rights Acts (1964 and 1991), as well as Title IX of the Education Amendments. Faculty employees and ROTC Cadet witnesses and injured parties, including a twelve year old child, and whistle blower James Boswell, all provide their testimony and recollections of events of discrimination and harassment subsequent to the K.S. Gang Rape events. Before the Ft. Worth Human Relations Commission is Major Boswell's charge that his efforts to bring about justice and compliance with these laws had a broad causal effect on TCU's most recent retaliation efforts, as shown in TCU's General Counsel Letter of Restraint from campus, to Boswell as dated December 10, 2012.

Appendix 2. This appendix is the combined assessment of the legal research concerning the increasing pervasiveness of Sexual Assaults on University campuses nationwide.

Appendix 3. This is the most recent court case concerning TCU Scholarship Freshman Victim K.S. (her initials) and her suit against TCU, KS verses TCU. It is inferred from the seriousness of the testimony, and the settlement of $10 million asked for, involved a large loss, that TCU agreed to settle out of court for, days before the trial date.

Appendix 4. This is the most recent court case concerning TCU's breach of contract and suit, The Big East Conference verses TCU. It is inferred from this legal action, and the settlement agreement, that the amount TCU settled out of court for, was close to the initial asking amount of Five million dollars in the law suit.

2. Besides the Appendixes, this case study involved analysis of significant resource documents labeled as R-1 to R-20. It is through these documents and Major Boswell's report to the US Department of Education and the Texas Rangers, that TCU's motive for retaliation shows an indifference to required protection for whistle blowers.

3. This TCU Deliberate Indifference Report details the rationale for intervention concerning TCU's culture, student safety, abuse of police protection, and fraud. Egregious and outrageous conduct is identified by the alleged treatment of KS Case of injury from Gang Rape by three TCU athletes in the TCU dormitory; by placing a TCU faculty member, alleged of the rape of R.T., in charge of the classes taught by the "removed whistle blower"; and the briefing of cadets at a "TCU Assembly", a briefing which conveyed an inaccurate, TCU version of the events to attendees.

4. These findings of poor handling of their Sexual Harassment and Assault incidents, raises serious questions about the Ft. Worth Human Relations Commission's "proposed **No Cause** finding." We request the HR Commission accept our findings, and propose expansion of the charges i.e.,"age discrimination"; and to acquire requested Production of Materials, e.g., Title IX Financial and Clery Compliance records.

Respectfully,

Herff L. Moore, PhD, SPHR

Enclosures **Statement of Oath**

I swear and affirm that I have read the above response and that it is true to the best of my knowledge, information and belief.

Signature of Consultant ______________________

Subscribed and sworn to before me this date, December 2, 2013.

______________________

ADAM BRINKLEY BROUGHTON
My Commission Expires
March 8, 2016
NOTARY PUBLIC
STATE OF TEXAS

## APPENDIXES

## TABLE OF CONTENTS

Appendix 1. "Major Boswell packet concerning employment at TCU" provided to the US Department of Education and Texas Rangers

Appendix 2. Legal Research concerning the increasing pervasiveness of Sexual Assaults on University campuses nationwide.

Appendix 3. LAW SUIT K.S. (her initials) V. TEXAS CHRISTIAN UNIVERSITY

Appendix 4. LAW SUIT BIG EAST CONFERENCE V. TEXAS CHRISTIAN UNIVERSITY